| 35 | 1129 |
| 110 | 703 |

## No. 8865.

### THE MUTUAL NATIONAL BANK vs. KEENAN & SLAWSON.

Compensation cannot be validly set up in extinguishment of a claim for the price of commodities sold for *cash*, where possession of the same was obtained by an artifice or breach of trust.

The purchase price, payable *cash*, must be *paid* under the agreement.

Compensation rests essentially on good faith, and cannot take place against a claim for the restitution of a thing of which the owner has been unjustly deprived.

Article 1292, C. N., is identical with Article 2210 of our Code, and the authorities agree in that sense. Rulings in 6 An. 46, 207, 356; 7 An. 53; 28 An. 629, and other cases, affirmed.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*T. H. Kennedy* for Plaintiff and Appellee:

Compensation is not allowable against the vendor in a cash sale. 28 An. 627; Marcadé, Vol. 4, pp. 626, 627; No. 1, p. 629; No. 5 on Art. 1293, Code Napoleon; 18 Laurent, p. 468, and 2d note.

*Blanc & Butler* for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an action to recover the price of cotton sold for cash. The defence is compensation. From a judgment adverse to them the defendants appeal.

The following are the facts proved. On December 12th, 1881, Ben Gerson & Son drew a sixty days' note for $3,000 to the order of defendants, who endorsed it for accommodation. The note was used by the drawers. A few days previous to its maturity, learning that Gerson

142

& Son were in failing circumstances and would not take up the note, the defendants, through a broker who did not disclose them as his principals, bought from Gerson & Son 51 bales of cotton for $2,410.70, which they had under their own control.

The sale was made for cash, with special provision that $2,000 would be paid before 3 P. M. the same day, February 8th, 1882. When that hour came, the broker informed Gerson & Son that the amount would not be forthcoming, and that the cotton had been bought for Slawson. Gerson & Son then replied that the sale was cancelled. Later in the day Gerson & Son ascertained that the purchaser was one of the defendants. An attempt by Gerson & Son to sell the same proved unsuccessful, the defendants refusing to deliver it.

On February 14th, 1882, the $3,000 note maturing, the defendants took it up.

It appears that on the 4th of February Gerson & Son, who were indebted to the plaintiff Bank for advances, gave them an order for the cotton, but this order was not used.

Subsequently, no material circumstance having intervened between Gerson & Son and the defendants affecting the cotton transaction, the former, on March 31st, 1882, transferred to the plaintiff Bank their rights under it against the defendants.

The plaintiff Bank now sues, under that transfer, to recover the price of the cotton, $2,410.70.

The defendants, after pleading the general issue, and admitting the cotton transaction, allege the note of Gerson & Son endorsed and paid by them, and plead the amount thereof, $3,000, in compensation of the demand. They finally charge the simulation of the transfer, and conclude, praying for judgment under the issues.

It appears that on the trial of the case, the defendants, treating their answer and its averments as being a revocatory action, offered evidence to show knowledge in plaintiff of Gerson & Son's insolvency, unjust preference, and consequent injury to them, but the Court refused to admit the proof offered as irrelevant under the pleadings, and bills were reserved.

The answer contains no charge to justify the evidence, and no prayer to warrant a judgment upon it.

The court ruled correctly.

Under the facts as found, the only question presented is one of law: whether the compensation set up can avail?

The defendants urge, with great force, that the plaintiff Bank stands, under the transfer, in the shoes of Gerson & Son; that the transfer cannot prejudice them, and that, as before it took place, the

claim of Gerson & Son against them for the price of the cotton had been extinguished by compensation, the plaintiff Bank acquired nothing under the transfer.

The argument is solid in appearance only. It is significant that on the 8th of February, when the cotton was sold, the $3,000 note was not due; that it matured on the 14th, subsequently, when it was taken up; that previous to the purchase of the cotton, the defendants were well aware of the insolvent circumstances of Gerson & Son.

It was for the purpose, therefore, of covering themselves against the payment of a claim not in existence, conditionally so, and which, under any aspect, was not exigible, that the defendants purchased the cotton.

The law requires the co-existence of three conditions in order that compensation may be set up: 1st, Both debts must have the same object. 2d, They must be liquidated. 3d, They must be exigible.

If they were not exigible, that one of the debtors, who would not be bound to pay actually, would find himself, by the fact of compensation, deprived of the benefit of the term of credit. Mourlon 2, p. 756, No. 1443; Pardessus Dr. Com., Vol. 1, No. 250.

Speaking on the subject of compensation, Pardessus Dr. Com. says, Vol. 1, p. 282, No. 235, §2, "Cette compensation doit être offerte de bonne foi. Ainsi l'on ne pourrait trouver ce caractère dans la conduite d'un créancier qui achêterait chez son debiteur des marchandises qu'il feindrait de vouloir payer comptant et qui après en avoir fait l'enlèvement, n'effectuerait pas le paiement, mais exciperait d'une compensation. Il en serait de même de celui qui, empruntant, comme pour un besoin extrêmement pressé, une somme qu'il promettrait de rendre incessamment, refuserait ensuite d'exécuter cet engagement, sous le prétexte que le prêteur est son redevable. Ces sortes de ruses sont indignes de la bonne foi du commerce. Le créancier doit agir directement et les tribunaux n'accorderaient point, dans ce cas, un succès préparé par un véritable abus de confiance."

In support he refers to a decision of the Court of Cassation. See also Merlin Vo. Compensation, §2.

This Court has emphatically recognized and applied those principles in the following cases which it is unnecessary to analyze. Haydel vs. Roussel, 1 An. 35; Yale vs. Nolan, 3 An. 449; Nolan vs. Shaw, 6 An. 46; McKee vs. Amonett, Ib. 207; Rhodes vs. Hooper, Ib. 356; Breed vs. Purvis, 7 An. 53; Bogert vs. Egerton, 11 An. 73; Vincent vs Gandolfo, 12 An. 526; Guillebeau vs. Melançon, 28 An. 629.

The doctrine rests upon the principle clearly announced in Article 2210, R. C. C., which is to the effect that compensation shall not take

place against a claim for the restitution of a thing of which the owner has been unjustly deprived. This Article is found in the N. C. as Article 1292.

The notes upon it treat the party who has obtained the unjust possession of the thing of which restitution is asked, as a spoliator.

Bigot Preameneu says: "La compensation ne peut être opposée par celui qui est spoliateur d'une chose, à la demande qui lui en est faite. Le spoliateur ne peut sous quelque prétexte que ce soit, être autorisé à retenir ce qu'il a volé; l'ordre public l'exige."

Delvincourt says: "Quoique la compensation s'opère de pleine droit, le spoliateur n'y est pas recevable. *Spoliatus ante omnia restituendus.*"

There can surely be no escape from the operation of such principles in a case like the present one, in which the creditor, setting up compensation, had undoubted knowledge of the insolvency of his debtor, and by a preconcerted artifice, unjustly deprives his debtor of property of which he otherwise would not have obtained possession, and this with the view of paying himself and securing an undue preference.

If it be true that the defendants could not have set up compensation against Gerson & Son, had they been the actual plaintiffs herein, how can the defendants pretend that they can do so against a third innocent party?

There being no error in the judgment appealed from, it is affirmed with costs.