**(117 So. 568)**

No. 28858.

## HITT v. HERNDON.

Oct. 31, 1927. On the Merits May 7, 1928. Rehearing Denied June 4, 1928.

Herndon & Herndon and Cook & Cook, all of Shreveport, for appellant.

Thomas W. Robertson and John G. Gibbs, both of Shreveport, for appellee.

On Motion to Dismiss.

ST. PAUL, J. Defendant herein took both a suspensive appeal and a devolutive appeal from a money judgment against him. Plaintiff moved below to dismiss the suspensive appeal on the ground that the bond given was insufficient. Within two days after notice thereof defendant filed an additional bond in a sum sufficient to supply the deficiency, all in accordance with Act 112 of 1916.

The motion to dismiss is renewed here, the contention being that Act 112 of 1916 has been repealed by Act 289 of 1926, which amends and re-enacts article 575 of the Code of Practice, and repeals all laws in conflict therewith, "especially Act 45 of 1890," which itself amends article 575, C. P.

We are of opinion that Act 289 of 1926 does not repeal Act 112 of 1916. The two acts are not on the same subject, and are not inconsistent with each other. Act 289 of 1926, amending C. P. art. 575, prescribes the requisites for appealing, the effect of appeals when taken, and the method of testing the surety on appeal bonds, whilst Act 112 of 1916 provides for correcting irregularities and supplying deficiencies in appeal bonds.

The main, if not the sole, purpose of Act 289 of 1926, was to eliminate the concluding paragraph of Act 45 of 1890, which provides that:

"In the country parishes no execution shall issue * * * where an appeal lies, until * * * after the adjournment of the court by which the judgment was rendered, within which delay, a party may take a suspensive appeal on filing petition and appeal bond is now provided by law."

The motion to dismiss is therefore denied.

### On the Merits.

LAND, J. Plaintiff sues defendant for the sum of $32,583.63, with interest on each particular item according to law.

The petition contains at least four different causes of action, as follows:

(1) Plaintiff alleges: That on December 8, 1924, he purchased from defendant certain dairy cattle for the price of $14,000. That at the time he paid $2,000 in cash. That the remainder of the price, $12,000, was secured by chattel mortgage notes, and that in due course he paid $2,000 of this amount.

That, in addition to the amounts above mentioned, plaintiff paid defendant the sum of $419.64, which was to have been credited on the chattel mortgage notes; and that on February 7, 1925, a credit memorandum was issued to plaintiff by the defendant in the sum of $900, and in the further sum of $300, which were also to have been credited on the chattel mortgage notes.

Plaintiff further alleges that he added to the dairy herd purchased by him from defendant 70 head of milch cows worth $35 each, and 10 calves worth $15 each, and that all of the cattle were located on premises leased by plaintiff from defendant on December 8, 1924, for a period of one year, with the privilege of renewing the lease from year to year for a period of three years.

Plaintiff further alleges that defendant, on or about November 19, 1925, illegally, with-

out authority, and forcibly took possession of the dairy, the leased property, and all equipment belonging to plaintiff, in violation of the contract of lease and of plaintiff's property rights, *and that defendant, in unlawfully taking the possession of the property which plaintiff had purchased from him,* "has rescinded and annulled and abrogated the said sale and purchase that was made on December 8, 1924, and your plaintiff should recover the amounts which he has paid on the purchase price of said property, which were $2,000 cash and $2,419.64 additional, which he has since paid on the purchase price." (Italics ours.)

Plaintiff further alleges that, by the above illegal and unwarranted acts of defendant, he has been injured and damaged in the full sum of $18,000, itemized as follows:

| | |
|---|---:|
| A. Loss of credit and standing | $ 4,000 |
| B. Embarrassment, humiliation and inconvenience | 2,000 |
| C. Actual loss sustained by being deprived of the property | 4,000 |
| D. Damages, loss of time, and mental anguish caused by defendant's breach of contract of lease | 8,000 |
| Total | $18,000 |

(2) For further cause of action, plaintiff alleges: That on September 1, 1925, defendant signed an undated instrument, which was a private act of sale from plaintiff to defendant of a dairy and creamery outfit, owned by plaintiff, and located on Western avenue in the city of Shreveport, La.

That, by the terms of the act of sale, defendant obligated himself, as the consideration of the sale, to issue or to have issued, or to pay for and transfer, $1,000 worth of stock in the new creamery outfit which was to have been organized, and which is now the Dixie Creamery Company, "and which said stock is worth par value." That defendant was to assume a certain debt of $1,401.01 due by plaintiff to one Frank Lafitte. That defendant was to pay cash in the sum of $588.99 on the purchase price of the creamery outfit, and that defendant was to credit the sum of

$1,000 on the chattel mortgage notes, given by plaintiff to secure the purchase price of the dairy cattle sold to him by defendant on December 8, 1924.

(3) Plaintiff alleges, as an additional cause of action, that on July 22, 1925, defendant issued to the plaintiff his check in the amount of $275, and that the same remained due and unpaid.

(4) Plaintiff also alleges, as a cause of action, that he was entitled to $60, being the value of a cow sold by him to defendant on or about July 10, 1925.

Defendant denies in his answer any indebtedness to plaintiff, and, in the alternative, pleads compensation, and, after the balancing of all items, prays for judgment in reconvention against plaintiff in the net sum of $2,033.-68, with interest on $683.50 of that amount from June 16, 1925, until paid, and with 10 per cent. on the principal and interest as attorney's fees, and with interest on all other items from January 1, 1926, until paid.

All of defendant's demands were rejected in the lower court, and judgment was rendered in favor of plaintiff for the following items:

1. The amount of cash paid by plaintiff to defendant on the purchase price of the dairy cattle ............................. $4,000 00
2. The amount evidenced by credit slip of defendant, issued to plaintiff........... 419 64
3. The amount of unpaid check of defendant ........................................ 275 00
4. The value of stock in the Dixie Creamery Company, which was to have been organized ............................... 1,000 00
5. The $1,000 to be credited on chattel mortgage notes in the sale of the creamery outfit ..................................... 1,000 00
6. The value of a cow sold by plaintiff to defendant ................................ 60 00

A total of ............................. $6,754 64

The judgment appealed from allows legal interest on the whole amount recovered, from judicial demand until paid, and provides that $1,000 of this amount "may be paid by the defendant delivering to the plaintiff $1,000

stock par value in the Dixie Creamery Company, Inc."

Item 1, for $4,000, paid on the chattel mortgage notes by plaintiff, is conceded.

Item 2, for $419.64, is a credit slip. Defendant denied signing this slip, but admitted, on cross-examination, that he recognized the item. Plaintiff swears to the correctness of the item and to the signature of defendant. It was a credit to be applied on the chattel mortgage notes, and was properly allowed.

Item 3, of $275, check of defendant, and item 6, $60 for price of cow, are conceded as correct by defendant in his brief, and, in our opinion, have been proved with reasonable certainty.

Item 4, for $1,000, the value of the stock to be taken by defendant in the Dixie Creamery Company, Inc., when organized, for account of plaintiff, and item 5, the credit of $1,000 to be applied on the chattel mortgage notes, given by plaintiff for the purchase of the dairy herd from defendant, appear in the sale of September 1, 1925, made by plaintiff to defendant of his dairy and creamery outfit, located on Western avenue in the city of Shreveport.

The terms of the sale, as stated in the private act signed by plaintiff and defendant, are as follows:

"I am to take $1,000 stock in the new creamery company, which we are to organize. You are to assume $1,401.01 due Mr. Frank Lafitte and credit my notes you hold against me $1,000 November and December. A balance of $588.99 you are to pay me in money some time about the 15th or 20th of September, 1925.
"[Signed] H. L. Hitt.
"Jas. R. Herndon."

Defendant has neither paid the plaintiff the par value of the stock which it was agreed should be issued to him in the Dixie Creamery Company nor has defendant turned over stock of the par value of $1,000 to plaintiff.

Also, defendant has not credited the chat-

tel mortgage notes for the purchase of the cattle from him by plaintiff on December 8, 1924, with the $1,000. in accordance with the terms of the sale of the creamery outfit on September 1, 1925.

Plaintiff is entitled to recover both of these items.

■ Defendant complains bitterly as to that part of the judgment of the lower court holding him liable for $1,000 of stock par value in the Dixie Creamery Company, Inc. The answer to defendant's complaint is that he obligated himself, as part of the consideration of the sale of the creamery outfit, to take stock in the new creamery company for the benefit of plaintiff, but he has failed to do so.

The plaintiff alleged in article 5 of the petition that the stock was of par value. Defendant, in his answer, neither affirmed nor denied this allegation, as he is required to do under the Pleading and Practice Act, under penalty of having the allegation taken as true. Under the circumstances of the case, plaintiff was not called upon to offer proof as to par value of the stock, as it is admitted by the pleadings. Act 228 of 1924.

■ It is alleged in article 4 of plaintiff's petition:

"That on February 7, 1925, the said Jas. R. Herndon issued a credit memo. to petitioner in the sums of $900 and $300, all of which is shown by photostatic copy of credit memo. which is attached hereto and made part hereof."

The memorandum referred to is a letter from defendant to plaintiff, and reads as follows:

"Feb. 7, 1925.

"Mr. H. L. Hitt, City—Dear Sir: As you know after the final count of the dairy cattle bought from me on December 8, 1924, there was a shortage of thirty head, and, as agreed by you and myself, there is a credit due you on the last three of your notes given for the purchase of these cattle of $900, which credit bears interest from December 8, 1924. Also there is a credit of $300 due you on the last six rent notes of J. R. Griffin.

"[Signed] ·· ·Yours very truly,
 "Jas. R. Herndon."

The item of $900 was properly allowed, and we agree with the trial judge that, as to the item of $300, the testimony does not make it clear that plaintiff is entitled to recover that item.

The claims for damages for loss of credit and of time, inconvenience, embarrassment, humiliation, etc., are not supported by the evidence, and were properly rejected.

This brings us to the real issue in the case, i. e., as to the nature of the main action of plaintiff for damages for the illegal act of defendant in dispossessing him of his property.

■ The evidence in the case is clear that defendant, without the consent of plaintiff, and without process of law, wrongfully repossessed the leased premises and plaintiff's dairy and its equipment.

In so doing, defendant violated his obligation as lessor to maintain the plaintiff, his lessee, in the peaceable possession of the leased premises, and thereby committed a tort and grave trespass. R. C. C. art. 2692; Wood v. Monteleone, 118 La. 1005, 43 So. 657.

Plaintiff does not claim as damages the profits resulting from the operation of his dairy by defendant, after having unlawfully dispossessed him on November 19, 1925. Plaintiff has not proved pecuniary losses nor impairment of credit as the result of the unlawful conduct of defendant.

The evidence shows that, through neglect, plaintiff's dairy business had ceased to be profitable, and that plaintiff had lost his credit prior to the acts of trespass of which he now complains.

■ Defendant did more than illegally deprive plaintiff of the leased premises. He converted the property of plaintiff to his own use, and the general rule governing the measure of damages in actions for tortious conversion is the value of the property converted, with interest. Foley v. Bush, 13 La. Ann. 126; Millspaugh v. New Orleans, 20 La. Ann. 323; Burch v. Willis, 21 La. Ann. 492; Cham-

berlain v. Worrell, 38 La. Ann. 347; Reynolds v. Reiss, 145 La. 155, 161, 81 So. 884.

 We cannot agree with the contention of plaintiff and of the learned trial judge that defendant, in repossessing himself of the property he had sold plaintiff, "committed a tort, which tort was in the nature of a forced rescission of the sale made by defendant to the plaintiff."

It is not legally possible for a sale to be rescinded by a tort and one party replaced in statu quo while the other's rights are ignored. "One seeking relief through rescission of a contract must first offer to restore his adversary to the situation he was in at the time the contract was entered into." Clover v. Gottlieb, 50 La. Ann. 568, 23 So. 459.

"A vendee seeking practically the annulment of a contract of sale, cannot ask restoration of the price without proposing restitution of or accounting for the property." Vancleave v. Nelson, 49 La. Ann. 621, 21 So. 734.

"In case of dissolution of the sale for nonpayment of the price, the vendor returns the portion paid with interest, and the vendee accounts for rents and revenues after deducting for improvements." School Directors v. Anderson, 28 La. Ann. 739.

"On the dissolution of a sale the vendor is entitled, not only to take back his property, but to recover the fruits of the thing sold, during all the time the purchaser had it in possession." Derepas v. Shallus, 15 La. 371.

Plaintiff does not propose to account to defendant for the fruits and revenues of the dairy, operated by him from December 8, 1924, to November 19, 1925, but his proposition is merely to take back the purchase price paid by him to defendant, with interest, without such accounting on his part.

In our opinion, there has been no rescission of sale.

██ However, plaintiff is entitled to recover, on the facts alleged in his petition and proved on the trial of the case, although his conclusion as to the law applicable to the case is erroneous.

The case presented is one of tortious conversion, and plaintiff has a right to recover the value of the property converted by defendant to his own use on November 19, 1925, with interest from that date.

Instead of sequestering the property and claiming damages, plaintiff has said to the defendant: "You have taken my property tortiously, now pay me its value."

As far as the cattle purchased and on hand at the time are concerned, the interest of plaintiff in same is an equitable one, as these cattle were subject to the chattel mortgage debt due by plaintiff to defendant.

As to this particular herd, plaintiff had paid defendant the sum of $5,419.64, which he should recover as an equitable interest in the property converted by defendant to his use.

██ The item of $2,450, claimed by plaintiff, is the alleged value of 70 head of milch cows and 10 calves that had been added to the herd by plaintiff.

This item was properly rejected by the trial judge, for the reason that, when defendant repossessed the herd, the number sold plaintiff by defendant had been decreased at least to the extent of the number added to it by the plaintiff.

Much has been said in defendant's brief about the neglect of the cattle by plaintiff and their dying in large numbers of starvation. However, the loss of the cattle was confined almost exclusively to the herd sold by defendant to plaintiff. This gives corroboration to the contention of plaintiff that the cattle had died from drinking from a branch running through one of the pastures, and which had become impregnated with the refuse of crude oil. It appears that there were several pastures on the leased premises. Plaintiff owned all the cattle. If the deaths

in the herd had resulted from disease or starvation, it is inconceivable that such fatalities should not have been visited indiscriminately upon the whole herd, instead of upon that part of it purchased by plaintiff from defendant.

Defendant has pleaded in compensation the alleged balance of $10,000, due by plaintiff to him on the chattel mortgage notes for the purchase of the dairy cattle by plaintiff from defendant on December 8, 1924, the alleged balance of $1,500 for unpaid rent on the leased dairy premises, and other items.

Article 2210 of the Civil Code provides that:

"Compensation takes place, whatever be the causes of either of the debts, except in case: "1. Of a demand for restitution of a thing of which the owner has been unjustly deprived."

In Innis v. Ware, 1 Mart. (N. S.) 556, the defendant had tortiously taken from plaintiff nine bales of cotton. The plaintiff, at the institution of the suit, owed the defendant the sum of $503.44 for wages as overseer.

The defendant pleaded the general issue, and pleaded also that plaintiff was indebted to him in a much greater amount, and tendered the balance due plaintiff.

On the trial, the plaintiff objected to the defendant's availing himself of the plea of compensation or reconvention. The plea of compensation was sustained, and it was held, on appeal to the Supreme Court:

"Trespassers cannot avert a judgment for damages resulting from the trespass, by compensation or reconvention."

See, also, Mutual National Bank v. Keenan, 35 La. Ann. 1129.

■ Compensation is an equitable remedy, and is not extended to wrongdoers or those guilty of bad faith. Breed v. Purvis, Ward & Co., 7 La. Ann. 53; Nolan v. Shaw, 6 La.

Ann. 46; McKee v. Amonett, 6 La. Ann. 207; Rhodes v. Hooper, 6 La. Ann. 356; Guilbeau v. Melancon, 28 La. Ann. 629.

■ Although defendant contends that plaintiff redelivered to him the property purchased in consideration of the cancellation of the purchase price, the weight of the evidence is to the contrary, and shows that defendant is a trespasser. For this reason, the plea of compensation and reconvention was properly rejected in the lower court.

Plaintiff has answered the appeal, and prays for amendment of the judgment of the lower court so as to allow him to recover for the item of $588.99, mentioned in article 5 of the petition, with interest from September 1, 1925, until paid.

Defendant bound himself to pay this amount to plaintiff as the balance of the price of the creamery sale "some time about the 15th or 20th of September, 1925." Defendant testified that he had never received the amount, and we find no good reason why he should not have judgment for same, with interest from September 20, 1925, until paid.

Plaintiff also prays for amendment of the judgment so as to recover the value of the dairy equipment on the leased premises. This item was not allowed in the judgment of the lower court, evidently for the reason that plaintiff's testimony as to its value is mere supposition, and is not sufficiently definite and certain.

No other witness has testified to these items or to their value.

Plaintiff also prays for an amendment of the judgment so as to allow interest from November 19, 1925, until paid, on the $4,000 item mentioned in articles 1, 3, and 11 of plaintiff's petition, and on the item of $419.64, shown in article 3 of the petition.

Plaintiff also prays for an amendment of the judgment so as to allow interest from September 1, 1925, as to the two $1,000 items

contained in article 5 of the petition, and so as to allow interest on the item of $275, referred to in article 6 of the petition, from July 22, 1925.

The sums of $4,000, $419.64, and $1,000 are credits or payments on the chattel mortgage notes, given by plaintiff for the purchase of the dairy herd from defendant, and, as they represent plaintiff's equitable interest in, or the value of, the property at the time it was converted, we are of the opinion that the judgment should have allowed interest on these various items from the date of conversion, November 19, 1925. Reynolds v. Reiss, 145 La. 155, 161, 81 So. 884.

As to the interest on the $1,000 worth of stock "in the new creamery outfit which we are to organize," there is nothing in the record to show the date of organization of this company, and, for this reason, the judgment properly allowed interest on this item from judicial demand.

It is therefore ordered that the judgment appealed from be amended in the following particulars:

First. So as to allow the item of $588.99, mentioned in article 5 of plaintiff's petition, with legal interest thereon from September 20, 1925, until paid.

Second. So as to allow legal interest on the sums of $4,000, $419.64, and $1,000, credits or payments on the chattel mortgage notes for the purchase of the dairy cattle on December 8, 1924, from November 19, 1925, until paid.

Third. So as to allow legal interest on the item of $275, the unpaid check of defendant in favor of plaintiff, from July 22, 1925, until paid.

It is now ordered that the judgment, as amended, be affirmed, and that defendant pay the costs of the lower court and of appeal.

O'NIELL, C. J., and ST. PAUL, J., concur in the result.