FORD v. RUSSELL

——

(May 19, 1930.  Opinion and Decree.)

————

Alexis Brian, of New Orleans, attorney for plaintiff, appellee.

Lazarus, Weil & Lazarus, of New Orleans, attorneys for defendant, appellant.

JANVIER, J.  Ford, plaintiff, seeks to recover from Russell, defendant, $640.60, of which $634.80 has been paid by him to Russell as installments on the purchase price of certain land formerly forming part of Poydras plantation in the parish of St. Bernard.

On August 3, 1921, a written contract was entered into under which Ford agreed to pay $2,912 for the land.

He paid $292 in cash and, for the balance, executed ten notes, each for $262, one payable each year for ten years.

Although the contract required only $262 to be paid each year, Ford had on July 11, 1922, paid to Russell a total sum of $634.80, and had also expended in costs in connection with the transaction $5.80, making a total of $640.60, which is the amount he now sues for.

The contract, which was in writing, stipulated that, when the payments aggregated one-half of the total purchase price, an act of sale would be passed transferring title.

This contract was duly registered in the conveyance records of the parish of St. Bernard, and is still uncancelled upon the records.

During July, 1922, a crevasse occurred at Poydras, and as a result thereof the Mississippi river made large encroachments upon the land which Ford had contracted to buy.

Later, after the waters had subsided and had left a large cut or bay in the land which formed the basis of the contract, the levee authorities found it necessary, in reconstructing the levee, to appropriate another substantial portion of the land in question, with the result that, after the completion of the levee, there remained but little, if any, of the land available for cultivation or other use.

For some time Russell, through his agent, negotiated with the Lake Borgne Basin Levee board in an effort to obtain from that body compensation for himself and for those to whom he had contracted to sell lands, for such property as had been taken, and finally, after litigation, he was successful in securing a sum which is said to represent the assessment value of the lands taken.

This money was divided by Russell among the land purchasers on an acreage basis, and on that basis there was due to Ford $197.10. Ford, however, refused to accept that sum as representing the full amount due him, treated the transaction as having been terminated by the occurrences to which we have referred, and now seeks to recover from Russell the full amount paid to him up to the time of the crevasse and also the expenditures to which we have referred.

Since Russell, prior to the commencement of this proceeding, had permanently left the state of Louisiana to take up a residence elsewhere, plaintiff deemed it necessary to create jurisdiction in the Louisiana courts by attaching here moneys and credits held for Russell by third persons.

Russell had, prior to leaving this city appointed by notarial act Meyer Eiseman as his agent, with general powers, and had registered that act of procuration in the office of the clerk of court for the parish of St. Bernard.

Defendant's first contention, raised by exception, was that, since he had left a general power of attorney here under which proceedings in personam could have been commenced against him, his property could not be brought into court by attachment.

Whether the fact that he personally resided without the state and could have found it a simple matter to withdraw all his funds and movables from this jurisdiction and thus deprive plaintiff of the probability of recovering under such judgment as he might obtain, would entitle plaintiff to proceed by attachment, is fortunately a matter upon which we need burn no midnight oil, as we believe that, by voluntarily appearing through his attorney in fact and through his attorney at law, he has waived

his objection to the form of the commencement of the proceedings, however sound that objection may originally have been. Article 93, Code of Practice.

Having eliminated that preliminary question, it now behooves us to consider the various other defenses which Russell's astute counsel has interposed:

First, that the petition does not set forth a cause of action for two reasons: (a) That plaintiff failed to offer to cancel the contract to purchase the property and failed to erase it from the conveyance records; and (b) that, since the property was not destroyed by defendant's fault, but by vis major, and since the contract created in plaintiff an absolute right to take over the property as soon as he had paid one-half the price, pending payment of the price, it was being held at his risk, and that therefore, he and not defendant should suffer as the result of the destruction by an act of God.

Second, that, if the petition does disclose a cause of action, such cause of action is barred by the prescription of five years.

Third, that plaintiff is estopped to demand restitution of the full amount paid by him because he, by his actions, authorized Russell and his agent, Eiseman, to negotiate with the levee board for compensation, and thus tacitly agreed to accept as full remuneration such settlement as might be obtained from that board, either amicably or as the result of litigation.

The contention that the petition is fatally defective because in it plaintiff failed to tender back to defendant such rights as may have been transferred by the contract and failed to set forth a willingness to have erased from the records the inscription of that contract does not impress us.

Of course, if we could interpret plaintiff's failure to make the allegations referred to as evidencing a desire to receive back his payments and at the same time to retain such rights as he might have had in and to so much of the land as remained, we would readily hold that such desire could receive no encouragement at our hands. He could not eat his cake and still have it. But the petition clearly shows that plaintiff's purpose was to abandon all right or claim to any of the land, and, so far as this contention is concerned, defendant's rights to such land as remains, if any does remain, and to the cancellation of the inscription of the contract on the public records, can be protected by an appropriate decree.

The cases cited by defendant, Vancleave, Jr., vs. Nelson et al., 49 La. Ann. 621, 21 So. 734; Roberts vs. Rodes, 3 Mart. (N. S.) 100; George vs. Knox, 23 La. Ann. 354; Clover vs. Gottlieb, 50 La. Ann. 568, 23 So. 459; Hitt vs. Herndon, 166 La. 497, 117 So. 568; and Andrews vs. Hensler, 6 Wall. 254, 18 L. Ed. 737, in our judgment, do no more than establish the principle that one cannot retain the benefits of a contract and avoid the correlative obligations. True, in the Vancleave case, the court said:

"The allegations and prayer of the petition virtually make this a suit to set aside and annul the contract of sale, though the petition does not *express* this in so many words. And, while asking the restoration of the price represented by cash and notes, the vendee proposes on his part no restitution of or accounting for the property bought."

But we do not believe that it was intended to hold that there must be an affirmative allegation of willingness to return the property, if the petition, read as a whole, indicates such willingness; as does the one we are now considering.

In reaching this conclusion, we cannot lose sight of the fact that it is very doubtful if any of the land in question actually remains, and it is therefore probable that nothing remained on which plaintiff could claim any right under the contract, even if he desired to do so.

The contention that, at the time of the crevasse, the property, though in the legal possession of defendant, was in reality held at plaintiff's risk, because the contract gave him (plaintiff) the right to obtain a deed thereto on the sole condition of paying one-half of the purchase price, seems to us to be based on a misconstruction of the provisions of articles 1919 and 2552 of the Civil Code. Article 1919 reads as follows:

"If the contract be complete, and be one that purports a transfer of the ownership of the property, its destruction before delivery or default does not exonerate the party who was to have received it, from the performance or delivery of that which on his part was intended as the price or equivalent for such property."

It is argued that, since the contract here purported a transfer of ownership, as soon as the contract was executed, the risk of destruction by vis major was shifted to Ford. We think that, in view of the other articles of the Code with reference to the situation which existed here, the construction urged upon us by defendant cannot be placed upon this article, and that it is only where the title has passed and the purchaser has neglected to take possession that the risk pending taking possession shifts to him.

This intention is plainly indicated in article 1918 and also in article 2467 et seq. Particularly does article 2471 throw light upon the situation. That article reads in part as follows:

"A sale, made with a suspensive condition, does not transfer the property to the buyer, until the fulfillment of the condition.
"If the thing be destroyed before this happens, the loss is sustained by the seller."

Here, even if we could treat the contract as anything more than a mere agreement to sell, still the suspensive condition, the payment of the price and the retention of possession, would have prevented the shifting of the risk to plaintiff.

Article 2552 also applies to a sale complete except for delivery, as is plainly shown in Pittsburgh & Southern Coal Co. vs. Charles B. Slack & Co., 42 La. Ann. 108, 7 So. 230, in which our Supreme Court said:

"This presents a simple issue of fact, involving no question of law whatever. There is no question as to the completeness of the contract between the parties. The issue is as to the terms of the contract. If, as defendant contends, the contract was for a sale, to take effect as such only on August 20th, covering alike the boat and barges, plaintiff would admit that the loss of the boat fell on him, just as he does admit that he must bear the loss of the barges. If, on the other hand, the contract was that the sale of the boat was to take effect on the 18th, the Civil Code would inform the defendants, unmistakably, that, the 'agreement for the object, and the price thereof, being completed,' the thing sold was at their risk, 'although the object had not been delivered, or the price paid,' the seller not being in default for non-delivery."

Nor do we attach any importance to defendant's suggestion that possession could have been obtained by Ford immediately upon execution of the contract had he desired it. It is admitted that he did not take possession and his rights are determined by the legal situation as it existed and not by what might have been the situation had he been granted the right to take

over the property and had he done so. Even had he gone into possession prior to paying the price, he would have been on the land only by sufferance and not as owner, and we doubt whether, in the absence of an express agreement, he would be responsible in case of destruction by a fortuitous event. We think that evidence on the question of whether other prospective purchasers went into possession was inadmissible.

We now approach the question presented by the plea of prescription of five years under Civil Code, art. 3542, which reads in part as follows:

"The following actions are prescribed by five years:

"That for the nullity or rescission of contracts, testaments or other acts."

The crevasse occurred in July, 1922, and this suit was filed on September 13, 1928, or more than six years after the crevasse.

Plaintiff maintains that this is not an action for nullity or rescission, but a simple suit for the return of a deposit, and that thus it should be barred, not by the prescription established by Civil Code, art. 3542, but rather by that of ten years under Civil Code, art. 3544. Inasmuch as there is no controversy over the fact that after the crevasse it was no longer possible for the owner of the land to transfer it to the prospective purchaser, there is no necessity for a judicial determination of whether the contract should be receded from, but all that is presented for our consideration is whether, when a contract becomes impossible of performance, money paid on account thereof should be returned. There is considerable room for dispute in matters of this kind over the question of whether

or not the prescription applicable is that provided for under article 3542, or is that set forth in article 2221. At first reading, these two articles seem to cover identical situations, and in one prescription of five years is fixed, whereas in the other ten years is required. The Supreme Court of this state, in Brownson vs. Weeks, 47 La. Ann. page 1042, 17 So. 489, 492, discussed these two articles, and, after stating certain situations to which the five-year prescription set forth in article 3542 applied, said: .

"In our opinion, the prescription of ten years applies to a different class of cases. It reaches those where contracts, perfect and complete on the face of the act evidencing them, are attacked as absolutely null and void, in order to have them so decreed, through proof of extrinsic facts establishing the absence of one of the elements essential to the very existence of the contract; for instance, a contract of sale or exchange where one of the things exchanged or the thing sold was found to have had no existence at the date of the contract."

We see no difference between the case where the thing sold or exchanged was found to have no existence at the time of the contract and the case where the thing sold or exchanged, though in existence at the time of the contract, had passed out of existence prior to the date fixed for delivery thereof. Whether the prescription applicable here is that provided for by article 2221, or that provided in all other personal actions under article 3544, is immaterial, because in both cases that fixed is ten years, and we are quite certain that one of these two articles is applicable and not article 3542.

The only remaining question is that presented by the plea of estoppel, which is

based on the theory that, as Ford knew that Russell was negotiating for a settlement of the claim which all of the purchasers had against the levee board, he is bound by the result of those negotiations and the resulting litigation, and is estopped to claim anything more than his proportionate share of the total sum finally paid to Russell. On this question we think it unnecessary to say more than that a careful review of the record convinces us that at no time was the conduct of Ford such as to give to Russell, or his agent reason for believing that he (Ford) was willing to accept only such return as might be obtained from the levee board, or that he intended to waive his claim for the return of his entire payment. We are therefore of the opinion that the amount paid by Russell, together with the necessary costs incidental thereto, should be returned to him, subject, of course, to a credit for the amount which he has already received, to-wit, the sum of $197.10.

The judgment appealed from is amended by increasing the amount thereof from $640.20 to $640.60, subject to a credit of $197.10 deposited on June 28, 1929, and subject to the execution by appellee of such document as will cancel any remaining rights under the contract and as will cause the erasure from the conveyance records of the parish of St. Bernard of the inscription of the said contract.

As thus amended, the judgment appealed from is affirmed; appellant to pay all costs.