## BRYSON v. BATES–CRUMLEY CHEVROLET CO., Inc.*

## HOWARD CRUMLEY CO., Inc., v. BRYSON.

### No. 5232.

Court of Appeal of Louisiana. Second Circuit.

April 3, 1936.

A. M. Pyburn, of Shreveport, for appellant.

Thos. M. Comegys, Jr., of Shreveport, for appellee.

TALIAFERRO, Judge.

These consolidated cases are the sequence of a credit sale of a Chevrolet automobile by Bates-Crumley Chevrolet Company, Inc., now the Howard Crumley Company, Inc., to George Bryson, on June 27, 1933, and its alleged subsequent tortious conversion by said company. Negotiations between the parties antedated the consummation of the sale. Bryson delivered to the company his old car and, after being paid in cash a part of its trade-in value, left the remainder in the company's hands to be applied on the price of a new car. At the time the sale was closed, he was in financial straits and, to avoid the evidence of his purchase appearing upon the public records, interposed one B. T. Reagor as the ostensible purchaser who signed the papers necessary to close the transaction, including a note for $574.50, representing the deferred part of the purchase price and carrying charges, and the mortgage securing payment thereof. The company's agents understood the true facts of the transaction and knew that Bryson was the real purchaser. The note was payable in monthly installments of $32. It contains a stipulation that failure to pay any installment thereof when due shall mature the entire note. Installments due in July and August were paid promptly by Bryson, but

*Rehearing denied April 30, 1936.

he found himself unable to meet the one falling due in September. His default was brought to Reagor's attention by the company's agents, and he was pressed to adjust the matter or have Bryson surrender the car to it until the indebtedness had been satisfactorily conditioned. Reagor got the car from Bryson in the latter part of October and delivered it at once to the company. On November 7th, Bryson paid the installment due in September. The car was sold for a net price of $460 on December 11th, without notice to Bryson.

The understanding between the parties when the car was turned over to the company by Reagor, and when Bryson made the payment on November 7th, are controversial questions in the case. The company contends that it agreed with Reagor that he would be allowed ten days "to take up the notes," and the car would be held that long for him, and if the notes (installments evidently) were not paid within that time, the car would belong to the company. It is pertinent here to say that Bryson was not present when the car was delivered, but the substance of the agreement then made was communicated to him by Reagor. Bryson contends that the car was delivered to the company at its insistence, to be held by it until he had the time and opportunity to put the note in a condition satisfactory to the company, and that title thereto was not intended to, and in fact did not, pass with delivery or as a result of failure to meet any part of the agreement made at the time of its delivery by Reagor, or subsequent.

Bryson instituted this action in trover for the alleged unlawful conversion of his property by sale thereof. He sues for $751.81 as the value of the car, and for $1,000 additional for its illegal seizure and sale and the consequent inconvenience, humiliation, annoyance, and expense growing out of or as incident to said illegal sale.

In the alternative, he sues for $323.31, being the amount he claims to have paid on the price of the car, plus said $1,000; and further in the alternative, for the $32 he paid the company after the car was delivered to it. This amount is sued for only in the event it should be held that at the time the payment was made, title to the car had revested in the company.

Defendant's original position, as disclosed by its answer, was that Reagor was the true purchaser of the car and that he alone made the payments on its price, but now contends that Reagor acted as Bryson's agent through the entire transaction. It does admit that Bryson paid to one of its salesmen $32 on the note, on November 7, 1933, which was accepted by it on the following conditions: " * * * that said salesman brought said money to respondent and that said salesman, under instructions from respondent, advised plaintiff that it would accept the $32.00 only on condition that as consideration of said payment plaintiff should be given an opportunity of paying up all past due indebtedness on said car on or before November 28, 1933, in which event he was to have an opportunity of buying the car and paying said note; that plaintiff assented to this proposition. Respondent shows that the said Bryson failed to make said payment on or before November 28, 1933, and that his option to purchase said car thereby expired."

In the alternative, should it be held that Bryson was the real purchaser of the automobile, defendant reconvened and prayed for judgment against Bryson for the balance due on the purchase price note, with interest and attorney's fees.

Plaintiff moved to strike out the reconventional demand on the ground that it was not necessarily connected with and incidental to the main demand, both parties being residents of Caddo parish; and for the further reason that it was in conflict with and is inconsistent with the defenses urged against plaintiff's main demand. The motion was referred to the merits.

After trial on the merits, there was judgment for plaintiff for $500, and the reconventional demand was rejected. Rehearing was granted, on the application of defendant as to the quantum of damages only. Defendant thereafter dismissed its reconventional demand as of nonsuit, but prior to doing so, instituted suit against Bryson to recover the balance due on the note. In that suit it is expressly averred that Bryson was the true purchaser of the car and responsible for payment of the note. To this action Bryson filed certain pleas and exceptions, which are not now urged. In opposing the demand against him, Bryson urges as a shield the same facts and conclusions he employed as a sword in his trover suit. The two suits were ordered consolidated by the court, and after trial there was again judgment

for Bryson for $281, being the amount he had actually paid on the price of the car, and rejecting the demand of the company on the note. The company has appealed from both judgments.

■ We are convinced from the testimony in the case that Bryson, when he delivered the car to Reagor, never intended to, and did not in fact, authorize him to part with his equitable interest therein, conditionally or otherwise. Bryson's attitude toward the matter supports his present position relative thereto. Reagor says that it was understood between him and Mr. Head, defendant's agent, that if Bryson did not "make payment within ten days, he could not have anything more to do with it," but granted to him (Reagor) the right thereafter to redeem it. He amplifies his testimony by adding that if Bryson did not pay up, the title "would reinvest" in the company; but, as stated before, Reagor was not authorized to make such an agreement for Bryson who, it is admitted, paid to the company the $32 a week or more after the ten-day limit had expired. He says that he was then informed by defendant's agent that another payment would be expected on or about November 29th. He also testified that the day he learned the car had been sold, he was prepared to pay off all of the past-due installments of the note. When he paid the $32, he certainly believed the car still belonged to him or else, as he says, he would not have made the payment. The fact that the company accepted the payment after the ten-day limit had passed argues strongly that, regardless of the nature of the agreement with Reagor, it was then conceded that Bryson's interest in the car was intact and that the forfeiture condition in that agreement was waived.

Mr. Head testified that he told Reagor that if he did not turn the Bryson car over to the company, he (Reagor) would be sued and his own car (also purchased from defendant) would be taken away from him. He further testified:

"A. That he would hold the car ten days—* * *

"Q. What agreement did Mr. Reagor make when he returned the automobile? A. We agreed to give him ten days to pay, to take up the notes and we would hold it that long for him, if the notes were not paid within ten days, then it would be our automobile.

"Q. It was agreed that title would revest in Bates-Crumley if the notes were not paid in ten days without foreclosure? A. I told Mr. Reagor if he didn't turn the car over to us we were going to sue him, take the other car away from him.

"Q. And he agreed to that? A. Yes.

"Q. Was payment made in ten days? A. No, sir.

"Q. How long after that was it, about how long? A. Oh! a week or such matter after the ten days was up.

"Q. Something like seventeen days in all? A. Yes.

"Q. Then after that payment was received did you have occasion to, after Mr. Bryson paid the $32.00? A. Yes.

"Q. To go see him? A. I went to see him, found him at this Peerless shop on Louisiana Avenue, and told him unless payment was made that day we were going to repossess the car."

Why should he want to repossess the car if it was then held by the company as owner, subject to redemption by Bryson or Reagor? This conversation occurred on November 28th. It is certain Bryson did not thereafter assent to revestment of title to the car in the company.

The above-quoted evidence and the following, given by Mr. Crumley, defendant's vice president and general manager, clearly discloses the company's real position on the question:

"Q. Did Mr. Bryson ever, after that payment had been sent in given notice to make his payments, catch up on them—did he ever tender any money whatsoever? A. Not to my knowledge.

"Q. Did—after the 29th of November, after those notes became delinquent, did you decide in your own mind to demand payment of the whole thing after he failed to pay in the allotted time, declare all matured? A. Yes."

This testimony undoubtedly shows that it was the company's intention to avail itself of the right given in the note, when one or more installments were in default, to declare the whole amount due and, of course, proceed to foreclose thereon.

The facts that the company endeavored to secure releases from Bryson and Reagor after sale of the car, and continued to retain possession of the note, are significant facts in the case.

We conclude that the legal title to the car was in Bryson when sold by defendant.

The car in question, while in Bryson's possession, had been driven about 5,000 miles. He says it was in good condition when delivered to defendant, but was unable to fix its real value at the time. There is no other evidence in the record bearing upon these points. The amount defendant sold it for did not fully pay the balance due on it. Its value decreased with the time it was stored.

■ As the car was delivered into defendant's possession lawfully, in selling it without the owner's consent, the measure of liability arising from the tort is the value of plaintiff's equity therein. This value may only be determined by deducting from the car's market value the balance due on its purchase price. The record is barren of any evidence fixing the value of the car when sold. Since it was in use some four months and had been driven nearly 5,000 miles, there must have been appreciable diminution in its value. No special damages have been proven.

In Hitt v. Herndon, 166 La. 497, 506, 117 So. 568, 572, the court said: "Defendant did more than illegally deprive plaintiff of the leased premises. He converted the property of plaintiff to his own use, and the general rule governing the measure of damages in actions for tortious conversion is the value of the property converted, with interest. Foley v. Bush, 13 La.Ann. 126; Millspaugh v. New Orleans, 20 La.Ann. 323; Burch v. Willis, 21 La. Ann. 492; Chamberlain v. Worrell, 38 La. Ann. 347; Reynolds v. Reiss, 145 La. 155, 161, 81 So. 884."

It was further held in that case that the payments made on the purchase price of the converted property were the measure of damages or liability. Dairy cattle were involved in that case, and it was clearly proved that the conversion was tortious and possession of the property acquired through trespass. It was not obvious that the value of the chattels had depreciated while in plaintiff's possession as owner.

■ See, also, 26 Ruling Case Law, p. 1148, § 63, which says: "The measure of damages in an action of trover is the value of the property at the time and place of conversion, with interest from that time, unless there are special circumstances which require a different measure of damages to be applied."

And again, section 64: "The general rule of damages in trover is the fair market value of the property converted."

65 Corpus Juris, p. 92, has this to say on the subject of the measure of damages: "While, as is elsewhere shown, plaintiff will be entitled to nominal damages if an actual conversion is established, if he seeks to recover more than nominal damages, he must prove his damages, and this is true even on default. Plaintiff must prove the market value of the property at the time and place of conversion, and proof of what plaintiff paid for the property is insufficient. Where there is no proof as to the value of the property converted, which proof is necessary to show the amount of damages, there can be no recovery."

This court, in J. H. McMahon & Co. v. Winn Motor Co., 8 La.App. 775, 777, stated that to recover in a case of this character, it was necessary to allege or prove the value of the automobile; and that the limit of recovery, unless special circumstances justified a different rule, was the value of the property at the time and place of conversion.

■ We do not think, in this case, the true measure of damages flowing from the unauthorized sale of plaintiff's car, the amount he had paid on its purchase price, and that the lower court in so holding erred. Plaintiff should have a day in court to prove the value of the car when sold by defendant, in order to establish the damages, if any, sustained by him through the conversion.

■ The judgment rejecting the company's suit on the note is correct. It cannot hold the proceeds of sale of the car and at the same time recover on the note.

For the reasons assigned, the judgment appealed from in suit No. 65162 on the docket of the lower court is affirmed in so far as it holds that the title of the car in question was vested in plaintiff when sold by defendant, and that defendant is responsible to plaintiff for the damages actually sustained by him on account of such sale, the measure to be as herein fixed; but as to the quantum of damages, said judgment is annulled and set aside, and as relates to that question, there is nonsuit

of the case. Costs in both courts are assessed against defendant.

The judgment appealed from in case No. 66544 on the docket of the lower court is affirmed, with costs.