The A.B.C. Oil Burner Heating Company, Inc., brought this suit against George J. Palmer, for $735, the balance alleged to be due on a contract for the installation of an air conditioning system in Palmer's office, the contract price being $1485 and $750 having been paid on account.
Palmer answered averring that the plaintiff failed in the attempted execution of its contract and, assuming the character of plaintiff in reconvention, averred that "from the time of the installation of said system by the plaintiff some time in the early part of 1942 up until August, 1944, the said system was absolutely useless to him because it would not perform its functions; that some time during August, 1944, he found it advantageous to move his office, and not wishing to abandon the cooling system, employed the American Heating Plumbing Company of New Orleans to remove as much of the system as might be salvaged and reinstalled in reconvener's new office. That the American Heating Plumbing Company was able to salvage and remove only the unit itself which it reinstalled in reconvener's new place of business; that the value of the unit so taken and used in reconvener's new place of business had a value of only $500.00, credit for which the plaintiff is entitled herein." He prays for judgment in reconvention for $250, the difference between the value of the unit used by him and the $750 paid on account.
There was judgment below in defendant's favor dismissing the main demand and awarding him judgment as prayed for on his reconventional demand. The plaintiff has appealed. *Page 464 
It appears that the cooling system which the plaintiff company agreed to install in Palmer's office was purchased by it from the manufacturer, the Fairbanks Morse Company or, at least, the main unit of that system was so acquired, and that when it developed that the system as installed by plaintiff would not operate to Palmer's satisfaction, the plaintiff refused to pay the Fairbanks Morse Company and that, consequently, the Fairbanks Morse Company brought suit against the A.B.C. Oil Burner Heating Company, Inc., for $917.50, the cost of the cooling unit. The case was decided below against Fairbanks, Morse Company, but on appeal to this Court (24 So.2d 393, 396) the judgment was reversed, this Court saying:
"* * * It is clearly shown by the expert evidence that the failure of the unit to produce the cool air guaranteed by A B C to Mr. Palmer is not due to any vice in the machine or because it is not large enough to accomplish the desired result. In fact, as we have above stated, the evidence makes it plain that the failure of the unit to perform in accordance with A B C's guarantee to Mr. Palmer is due entirely and exclusively to an inadequate water supply.
"In this situation, the question arises as to whether it was the duty of Fairbanks Morse or A B C to ascertain, prior to the installation of the unit, that the water supply in Mr. Palmer's office was adequate to permit the unit to function in accordance with the guarantee in A B C's contract with Palmer.
"* * * * * *
"* * * Since the evidence establishes to our satisfaction that the failure of the unit to perform to the extent guaranteed by A B C to Mr. Palmer is not due to the size of the unit or because of mechanical vices contained therein, plaintiff has performed its agreement as warranted and is entitled to recover the agreed price for the unit."
Plaintiff's contract with Palmer contained the following:
"Water, Piping, Drains, Etc: Our proposal covers all necessary water and drain connections to and from the air conditioning unit, but you are to supply us with a water line of sufficient size to any point within ten feet of the air conditioning unit."
[1] We held in the Fairbanks case that the failure of the unit to function properly was due to the inadequate water supply, i. e., the water pressure, and that that failure was not attributable to Fairbanks Morse, the manufacturer of the unit. In the instant case, so far as the main demand is concerned, the question of responsibility for the inadequacy of the water supply must be placed upon either the plaintiff, the contractor, or defendant, the purchaser of the system. There is no pretense that any demand was made on Palmer to supply a different size water line. His contract obligated him to supply a water line of "sufficient size" and if the water line was insufficient it was the contractor's duty to notify him and to demand another water line. No criticism of the water line having been made by the contractor, it will be presumed to have been satisfactory to it and, therefore, it follows that since the failure of the system to function was due to an improper water supply, the fault must be said to be that of the contractor. Palmer certainly was in no position to determine what amount of water was necessary to the successful operation of the cooling system. We conclude that on the main demand the case is with the defendant.
[2] We notice that a plea of prescription of one year has been filed in this Court addressed to the reconventional demand and based upon Article 2534 of the Revised Civil Code. This article of the Code applies to redhibitory actions. This is not a redhibitory action but a demand for the return of a deposit made on account of the contract price of the installation of a cooling system. The prescription pleaded is, therefore, not applicable.
[3, 4] Palmer is contending that since the contractor failed to execute his contract he is entitled to recover the amount paid on account less a credit for part of the system used by him. It is conceded that Palmer could have notified the A.B.C. *Page 465 
Company that the cooling unit was in his possession and asked for its removal. In other words, tendered it back to the A.B.C. Company and demanded the amount paid on account. He might also have called in another contractor to repair the cooling system at plaintiff's expense, after having first put the A.B.C. Company in default. He did neither. He moved the main part of the equipment, the cooling unit, to another location where he had it installed and where, he testified, it is performing satisfactorily. Palmer's explanation is that he was endeavoring to minimize the loss by utilizing the cooling unit, but whatever his purpose he took something belonging to the A.B.C. Company with or without the right to do so, and his obligation under the circumstances is to pay for it.
[5] In Hitt v. Herndon, 166 La. 497, 117 So. 568, 572, it was held that the "general rule governing the measure of damages in actions for tortious conversion is the value of the property converted, with interest. Foley v. Bush, 13 La. Ann. 126; Millspaugh v. New Orleans, 20 La. Ann. 323; Burch v. Willis, 21 La. Ann. 492; Chamberlain v. Worrell, 38 La. Ann. 347; Reynolds v. Reiss, 145 La. 155, 161, 81 So. 884."
[6] The only evidence in the record as to the value of the cooling unit at the time of its conversion to Palmer's use, was that offered by Mr. E.H. Loubat who, testifying on behalf of Palmer, stated that it was worth $500. His testimony is criticized by counsel for plaintiff upon the ground that the valuation is too low for a piece of machinery for which his client was obliged to pay the manufacturer $917.50, almost double the value placed upon it by Loubat. However, that is the only testimony in the record and must be accepted.
We are in accord with the views evidently entertained by the learned judge of the trial court and believe that Palmer should have judgment in reconvention, consequently, and
For the reasons assigned the judgment appealed from is affirmed."
Affirmed.