94 So.2d 891 (1957)
PORT FINANCE COMPANY, Inc.
v.
Frances CAMPBELL.
No. 4412.
Court of Appeal of Louisiana, First Circuit.
May 2, 1957.
*892 Ward L. Tilly, New Iberia, for appellant.
Helm, Simon & Gordy, New Iberia, for appellee.
ELLIS, Judge.
Plaintiff sold a second hand automobile to the defendant for which he took a chattel mortgage note for $765, which carried interest at 8% plus 25% on principal and interest as attorneys fees, payable in 18 equal monthly installments of $42.50, the first installment being due January 7, 1955. The defendant failed to pay any installment and on March 22, 1955 the present suit was filed seeking judgment for the face amount of the note and recognition of the special lien and privilege and chattel mortgage against the second hand automobile.
The defendant admitted the purchase of the second hand automobile, the execution of the note and the chattel mortgage, and asked for a rescission of the sale for redhibitory defects.
The case was duly tried and the district court ordered the sale rescinded and awarded the defendant a judgment against the plaintiff in the sum of $90 which he found to be the equity plaintiff was entitled to in the car traded in the deal. From this judgment plaintiff has appealed.
It appears that the defendant purchased from the plaintiff through used car dealers, Mannina and Fremin, at New Iberia an alleged '49 Mercury two door automobile. He was allowed $250 on his old Chevrolet of which amount he testified he still owed about $160, and $90 of the $250 was credited on the purchase price of the '49 Mercury.
On December 1st, plaintiff went by the used car lot of Mannina and Fremin and was shown the '49 Mercury which belonged to the plaintiff. He was given the key and allowed to drive the car. Upon his return he complained of the smoke, and he stated the agents told him it was because the car *893 had sat there a long time unused. However, the used car dealer purchased a breather cap or hose which they put over the spout through which the oil is put in the motor in order to direct the smoke under the car and to prevent its coming up in the car and annoying the occupants. The agents contend that they made no representations about the car as it did not belong to them and that they called the plaintiff and told them the defendant wanted to trade his Chevrolet in and the terms were dictated by the plaintiff. The defendant, however, and his companions testified that these dealers told them it was a good car. The plaintiff bought the car and gave his old car on which he was allowed $250 and signed a note for $765. Plaintiffs say that the sale price on the '49 Mercury was only $495 and the difference in the total price which was $855 was made up of insurance and other items. $90 was deducted from the $855 as the equity which defendant had in the car traded in of $90.
This action is brought under Article 2520 of the LSA-Civil Code which provides:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
and Article 2530 which provides:
"The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."
The District Court found from the facts that the '49 Mercury was practically useless and so much so that the defendant would not have purchased it had he known of the vices. We believe that his finding of fact is amply sustained by the testimony in this record, although the plaintiff complains that the witnesses were relatives or friends of the defendant. The District Court believed these witnesses and we see nothing in the record to justify a disbelief on their part. It is clearly shown that the automobile smoked so on the short trial run that what one witness described as a hose and the other as a breather cap was put over the opening through which oil was put into the motor so as to direct these fumes and smoke under the car. Plaintiff argues that the use of oil was an apparent vice. We do not believe that defendant can be charged with knowledge of this fact merely from the smoke coming in the car. He is an uneducated laborer. In addition the testimony shows that the car would hardly run and that it burned an excessive amount of oil, the shock absorbers were completely worn out, it stopped on one trip they attempted to make and they had to get someone to come and bring the family home and tow the automobile in. This all happened within approximately three weeks of its purchase. It is also practically proven that the motor in this case was a Ford motor rather than a Mercury motor. The ignition key had Ford written on it and there is other positive testimony that it is not a Mercury motor. The mechanic who made some repairs on the automobile for the plaintiff prior to its sale to defendant testified that he paid no attention to that difference, that the only difference was seven horsepower and one would have to measure the cylinder bore. We imagine the Mercury people would object strenuously to the accuracy of this testimony. It is definitely shown that the Mercury motor at that time had approximately twenty-five more horsepower than the Ford, and for the mechanic not to know the difference in a Ford and Mercury motor does not speak too highly of his knowledge.
Opposed to the various witnesses which the defendant offered as to the absolute worthlessness of the '49 Mercury, is that of the mechanic who said he put $83 worth *894 of work on the motor and who could not testify positively as to whether it was a Ford or Mercury motor, and a body man who did an excellent job from the testimony of making the outside of this Mercury very attractive. According to the witnesses this was its most attractive feature.
We are convinced from the testimony that there was no manifest error in the finding of the trial judge as to the condition of '49 Mercury. In fact, we will agree with his evaluation of the facts, however, the plaintiffs contend that under the terms of this judgment he has lost $160 cash; which was paid out to extinguish the mortgage on the vehicle traded in by defendant, and, secondly, he lost the '49 Mercury automobile on which they had expended over $200 in repairs shortly prior to the sale, because the automobile was left out in the weather, the headlights knocked out and the windows down so that the inside of the automobile was drenched with rain and, in short, the automobile by the lack of care while in the defendant's possession became valueless and, third, plaintiff claims the loss of the $90 which the lower court awarded to the defendant for his equity in the old Chevrolet traded in by him to the plaintiff.
The plaintiff argues that the aim and purpose of the relief afforded in cases where the action in redhibition applies is to place the parties, buyer and seller, in "status quo" or in the position they were in prior to the transfer of the property. There is no doubt but that his position is well taken. The courts of Louisiana have held many times that in the case of the rescinding of a sale for defects in the article sold, equity and justice requires that the parties be placed in the same position they were in before the sale as nearly as is possible under the circumstances. Plaintiffs further contend that in order for the defendant to maintain the redhibitory action in this case he should have offered to restore the plaintiff to the state which existed at the time of the sale and, therefore, the defendant must have tendered or made an offer to tender of the automobile to the plaintiff. There is no question but that this is the law as shown by the following cases cited by plaintiff, viz., Galt v. Herndon, 16 La.App. 239, 133 So. 800; Goode-Cage Drug Co. v. Ives, 16 La.App. 383, 133 So. 813; Hitt v. Herndon, 166 La. 497, 117 So. 568; Kings Truck and Body Works v. Barrett, La.App., 39 So.2d 601; Womack v. Lafayette Furniture Co., La. App., 50 So.2d 843.
Therefore, in the present case the plaintiff contends that the defendant had to offer him the Mercury automobile plus $160 in cash which they are supposed to have paid as the balance due on a mortgage against the Chevrolet before defendant would be entitled to a judgment.
Defendant testified that his wife wrote to the plaintiff prior to the time that the first note became due that the automobile was worthless and that unless they could repair it, that he was unable to repair and pay for it, and that they could take the automobile. Plaintiff states that they never received any such letter and it is possible that the defendants are confused, for they did write a letter and it is in evidence, to plaintiff's attorney dated Feb. 15, 1955, in answer to a letter by the attorney to them, evidently demanding payment of the first installment. In effect they state the car is useless and the motor is not the one that is supposed to have been in it and they could not pay for it and repair it, too. In one paragraph the letter states: "I did not borrow the money to pay this car. It was already for the finance company." By this he meant that the finance company could have the automobile, in other words, he was tendering it back. Defendant testified that after he wrote the first letter to the plaintiffs which they deny receiving, that a representative of the plaintiff visited him and that he told him at that time that the car was worthless and offered to give him the car and that this man said he did not want it but that he was *895 going to come back and pick it up with the Sheriff and sell it at auction. It is admitted that a Mr. Hudson was representative of the plaintiff and was still in their employ at the time of the trial and he had come to see the defendant about this automobile, yet he was never placed on the stand and the defendant's testimony stands uncontradicted in the record to the effect that he was visited by a representative of the company and he told them how worthless the car was and offered the car back at that time and it was refused. In other words, the testimony in this case satisfies the requirements of the law that a tender was made and that any further tender by the defendant would have been a vain and useless thing. Corroborative of this is the fact that there are letters between the attorneys with regard to a compromise. At no time did the plaintiffs say they would take the car back, accept $160 and return the old car of the defendant's to him. The only car which the defendant could tender or the only thing he could do to place them in the same positions they were in prior to the sale was to offer the return of the `49 Mercury. The plaintiffs had possession, presumably, of defendant's old car at that time, as they stated they sold it many months later for junk. As to the $160 which the defendant admitted owing on his old Chevrolet car, there is not one line of proof in the record that the plaintiffs ever paid this amount or to whom it was owed. Be this as it may, the defendant made the only offer required of him, that is, to return the car which he got from them. It was up to the plaintiffs as to what was to be done about the defendant's old car.
The letters with regard to a settlement of the case do not really show that the plaintiff would have accepted a return of the '49 Mercury and $160 and return the defendant's old car to him even if it had been offered. They wanted the Mercury automobile plus $250 plus $100 to compensate for the use of the vehicle by Campbell from the date of purchase, that is, December 1, 1954. This letter was written June 1, 1955. On July 15, 1955 the plaintiff's attorney wrote another letter in which he stated he had submitted a counter proposal from defendant's attorney to the plaintiff but that after the representative had made an inspection of the Mercury automobile he had been advised that a compromise "is absolutely impossible." Therefore, the question of a tender or offer by the defendant was removed as a bar to his maintenance of this action for a rescission of the sale.
Plaintiffs argue also that the Mercury became valueless and it was impossible for the defendant to comply with the law, that is, place the parties as nearly as possible under the circumstances in status quo. It is shown that a representative of the company inspected this automobile less than two months after it was sold and notified the defendant that he was going to have it seized and sold. At that time the car was sitting on defendant's lot. Nothing was done even though the suit was filed in March 1955. In July 1955 the car was again inspected with regard to a compromise and it is then that they found that the headlights had been knocked out, the defendant said by children in the neighborhood, and the interior soaked with rain so that it was mildewed and ruined.
It appears from the record that the defendant was very prompt in notifying the plaintiff of the condition of the automobile and in offering it back to them, and they were very prompt in filing this suit in March 1955. Why they did not complete the seisure and have the car moved and protected is not shown by the record. They chose to leave it there and the defendant cannot be held responsible so as to bar his right to a rescission of the sale.
In view of the fact that there was actually no cash involved in this deal and the defendant apparently did not actually lose $90 we believe that the parties would be placed in the same position they were before the sale, as nearly as is possible, under the circumstances, by amending the *896 judgment so as to strike out the award of $90 to the defendant.
It is therefore ordered that the Judgment of the District Court be amended by annulling that portion which awarded to the defendant the sum of $90 and as thus amended the judgment be affirmed.