## NARCISSE LANDRY *v.* GILMORE F. CONNELY.

Where the purchaser of property of a succession, sold by order of a Court of Probates, fails to comply with the terms of the sale, that court has authority to compel a compliance, or to order the property to be sold anew *à la folle enchère*.

An obligation, though null and void *ab initio*, may be ratified or confirmed expressly or tacitly, verbally, in writing, or by acts manifesting clearly such an intention, or even, in some cases, by silence. C. C. 2252.

The execution of an act under private signature, by the purchaser of property at a succession sale, resold by order of the Probate Court on his failure to comply with

the terms of sale, by which he consents to lease or buy the property from the second purchaser, is an acquiescence in the judgment divesting his title.

No appeal or action of nullity will lie against a judgment, which has been voluntarily executed by the party against whom it was rendered.  C. P. 567, 612.

APPEAL from the District Court of Ascension, *Nicholls*, J.

The petitioner, Narcisse Landry, represents, that on the 18th of December, 1835, one James Anderson purchased, at the probate sale of the succession of Louis Marcellin Comès, a certain lot in the town of Donaldsonville ; that Anderson having failed to comply with the terms of sale, the property was ordered by the Court of Probates to be resold for cash, when, on the 18th of April, 1839, he, Landry, became the purchaser ; that subsequently, on the 11th of May, 1841, Anderson leased the property from him, acknowledging him as its lawful owner, and ratifying and confirming his title thereto ; that Anderson held the property, as such tenant, till the 6th of May, 1842, when he illegally and fraudulently sold the same to the defendant. The petition further states, that the defendant was aware of the facts above stated, at the time of his purchase ; that he was a party to the fraud practised by his vendor, and obtained the sale and possession fraudulently. The ground and improvements are alleged to be worth $700 ; and the plaintiff claims damages to the amount of $500, for the detention of the property since the 12th of May, 1842, and the slander of his title. The petitioner concludes with a prayer, that his title to the property may be confirmed, the sale to the defendant rescinded, and for $500 damages.

Connely answered by a general denial. He specially denied that the plaintiff acquired any title by the sale, under the order of the Court of Probates, made on the 18th April, 1839, which he avers was null and void, the court being without jurisdiction. He alleges that the contract of lease signed by his vendor was made through error both of law and fact, and is, consequently, null ; avers that Anderson, his vendor, acquired all the right and title of the succession of Comès by the sale of the 18th December, 1833 ; and concludes by praying that he, the defendant, may be declared the owner of the property.

The evidence introduced on the trial, will be found in the opinion of the court.

*Duffel* and *M. Taylor*, for the appellant. The adjudication to the plaintiff transferred the property to him. Civil Code, art. 2589. The proceedings were properly in the Probate Court. If any nullity originally existed it was cured by the subsequent ratification by defendant's vendor. Code of Pract. art. 612. Civil Code, art. 2252. Toullier, De la Preuve Littéralle, ch. 6, sect. 1, § 5, Nos. 491, 493, 502, 503, 509, 513, 517, 523. The right to attack the act *sous seign privé* between Anderson and the plaintiff, is personal to Anderson, and cannot be exercised by the defendant. Toullier, Des Contrats, chap. 5, Nos. 564, 566. The sale from Anderson to the defendant is absolutely null. Civil Code, art. 2427. Paillette, 1599, note a, No. 3.

*Ilsley* and *Nicholls*, for the defendant. The sale to the plaintiff was null, the Court of Probates being without jurisdiction. *Lafon's Ex'rs* v. *Lafon*, 1 Mart. N. S. 705. 6 Ib. N. S. 611. 6 La. 441. The lease executed by Anderson was not binding on him, having been entered into through error in law. 5 Mart. N. S. 255. Nor did it amount to a confirmation of the sale to plaintiff, not containing the essentials of such a ratification. Civil Code, art. 2252.

SIMON, J. 'The plaintiff is appellant from a judgment, rendered on the verdict of a jury, confirming and maintaining the defendant in his title to the property in controversy, as acquired by him from one James Anderson. The judgment complained of was rendered, after an unsuccessful attempt on the part of the plaintiff to obtain a new trial.

The facts of the case, as disclosed by the evidence, are these. On the eighteenth of November, 1835, James Anderson became the purchaser, at the public sale at auction of all the property belonging to the succession of Louis Marcellin Comès, (which sale was made by order and under the authority of the Court of Probates of the parish of Ascension,) of a lot of ground situated in the town of Donaldsonville, for the price of four hundred dollars, which, according to the conditions of the sale, was to be paid in three equal instalments to become due in March 1836, 1837, and 1838, the purchasers giving good and approved security *in solido*, with special mortgage reserved on the property sold, and paying ten per cent interest per annum on all sums remaining unpaid

at maturity.   On the margin of the *procès verbal* of adjudication, was attached with a wafer, the following writing : " I will be security for Mr. Anderson for the lot where he lives, and will sign the note when made.   T. C. Nicholls."   On the seventh of March, 1839, a rule was obtained by the widow and heirs of Comès, from the Court of Probates of the Parish of Ascension, on James Anderson, to show cause within ten days from the service thereof, why the lot of ground and improvements adjudicated to him, should not be resold ten days after the customary notices, at his risk and costs for cash, on his failing to comply with the terms of the first adjudication, by paying the purchase money with interest ; which rule appears to have been regularly served on the defendant Anderson.   Anderson having failed to file any answer to the rule within the legal delay, a final judgment was rendered, and signed against him on the 5th of April, 1839, making the rule absolute, and ordering the property to be resold at public auction, for cash, according to the demand of the applicants.   On the 18th of the same month, the property in dispute was offered for sale at public auction, according to the terms of the aforesaid judgment, and was finally adjudicated to the plaintiff in that suit, for the sum of $480 cash.

It appears further, that on the 11th of May, 1841, a certain act, under private signature, was executed between James Anderson and Landry, purporting to be a lease of the property in controversy, and a promise of sale from Landry to Anderson.   This act was signed by both parties, in two originals, one of which was kept by each, and contains the following stipulations : " Narcisse Landry will lease to James Anderson, the lot of ground, &c. by the said Anderson now *occupied, for the sum of fifty dollars* per annum, the lease dating back from the last of March, 1841, and terminating on the last of March, 1842, &c., and further, I, Narcisse Landry, do hereby promise and bind myself upon the payment of the said sum of sixty dollars, being for the rent then due, and for the additional sum of $480, to be then, in March, 1842, paid by Anderson in cash, to make and pass to the said Anderson, a full and absolute title to the said lot, conveying to him all the rights which I have acquired thereto by purchase at a probate sale dated the first of April, 1839."   Anderson continued to oc-

Landry v. Connely.

cupy the property under the lease; and on the sixth of May, 1842, he sold and conveyed the same to the defendant Connely, for the sum of one hundred dollars cash, the vendee assuming all the obligations of the vendor towards the estate of Louis Marcellin Comès.

The parol evidence shows, that before the 12th of May 1842, (the witness is uncertain whether it was before the defendant had already concluded the purchase, or only had it in view, but inclines to the belief that he had not yet made the purchase,) defendant had a conversation with the witness, Nicholls, (the subscribing witness to the lease,) in which said lease was spoken of, and in which he thinks he told the defendant how the transaction had taken place. Another witness proves that, on the 24th of April, 1842, the defendant offered, in his presence, to purchase the property from the plaintiff; that the plaintiff replied that he would sell the lot to Anderson for the price he had given for it, and the rent which Anderson owed him; but refused to sell to any other person.

The parish judge testifies that previous to the sale from Anderson to Connely, the latter went to his office to examine the claims of the plaintiff under the adjudication made to him at the probate sale; that they were exhibited to him, and that he examined them; but the witness cannot say positively whether the lease was then made the subject of conversation. It is also admitted by the defendant that he had a knowledge of the plaintiff's claim under said adjudication, previous to his purchase from Anderson.

Under the pleadings in this suit, and the above synopsis of the facts and circumstances disclosed by the evidence, several questions have been raised, and divers authorities quoted, as they seemed to favor the pretensions of the respective parties. The defendant's counsel has contended, that the plaintiff never acquired any title to the property in dispute, under the adjudication made to him at the sale made by order of the Court of Probates; as that sale, and all the proceedings by virtue of which it was made are null and void, for want of jurisdiction in the said court: that Anderson never was legally divested of his title thereby; and that the contract of lease, relied upon by the plaintiff, was made in error of law and fact, and is, therefore, null and void.

Landry v. Connely.

On the part of the plaintiff, it has been insisted, that the proceedings had by the Court of Probates were legal, and within its jurisdiction ; but that, even supposing them to have been null, the nullity was cured by the defendant's vendor, who ratified the plaintiff's title, and acquiesced in the judgment on which it is based.

The view we have taken of the question of ratification and acquiescence, as resulting from the lease and promise of sale produced by the plaintiff, and other circumstances of the case, renders it unnecessary to examine the question, (which perhaps could not be inquired into collaterally in this suit,) relative to the validity of the judgment of the Court of Probates on which the plaintiff's title is based, and to inquire fully into its jurisdiction in rendering said judgment. But we cannot forbear remarking, that it does not appear to us that the Court of Probates was utterly without jurisdiction, in granting the rule and ordering the second sale of the property in controversy. The rule had for its main object to compel the purchaser to comply with the conditions of the sale, or in case of his failure to do so, to cause the property to be sold anew, *à la folle enchère.* He was cited for that purpose and as one of the consequences of the purchasers not complying with the terms of the sale, was to bring the property back to the succession ; and, as being *succession property,* partly owned *by minors,* it could not be sold in any other manner but by virtue of an order of the Court of Probates. It seems to us that the very object of the proceeding being to complete a sale previously ordered by the Court of Probates, that court may well be considered as the tribunal most competent to carry into full effect its own orders. 6 La. 440. Again, the conditions of the first sale not having been complied with, it was undoubtedly within the province of the probate court to order the property to be resold. So, in the case of *Towles* v. *Weeks,* 7 La. 312, the rule obtained by the plaintiff was made absolute, and the defendants were required to comply with the terms of sale ; or, in default thereof, the property would be *resold on their account.* On the appeal taken from that judgment to this court, no doubt was entertained as to the jurisdiction of the probate court ; and the decree appealed from was affirmed.

Landry v. Connely.

But supposing the proceedings to have been irregular, and the probate court without jurisdiction, the question presents itself,— did not Anderson ratify the sale made to the plaintiff? and did he not acquiesce in the judgment which divested him of his title under the first adjudication?

It is first proper to notice that the defendant, in purchasing from Anderson, knew that he was buying *a litigious right.* He was aware that the plaintiff had acquired a title to the property under a judgment of the Court of Probates ; that the first adjudication had been set aside ; and that his purchase would subject him to a judicial controversy. He was not an innocent purchaser or third party ; and we are induced to believe that he was also made acquainted with the lease and promise of sale which had been executed between the plaintiff and Anderson. If so, the defendant acted in bad faith. His conduct shows a design on his part to obtain a title to the property from either of the parties : for after attempting to get it from the plaintiff to the prejudice of Anderson to whom it was to be sold by Landry, he applies to Anderson, and prevails upon him to pass him a sale to the prejudice of the plaintiff. We must, therefore, consider ourselves bound to hold the defendant to the full effect and consequences of the acts of Anderson, his vendor ; and if it be true that the latter had previously acquiesced in the judgment ordering the second sale, the defendant cannot recover.

The facts from which the ratification or acquiescence relied on by the plaintiff can be inferred, have already been fully stated. They consist mainly in Anderson's consenting to lease and purchase the property from the plaintiff, with a full knowledge of the origin and nature of the plaintiff's title; and to this, it may perhaps be added, that being a resident of the parish in which the property is situated, he suffered it to be sold after ten days public notice or advertisement, without making any opposition to the sale. Now, under the 2252d. art. of the Civil Code, " in default of an act of confirmation or ratification, it is sufficient that the obligation be voluntarily executed, subsequently to the period at which the obligation could have been validly [by the act required in the first paragraph of the article] confirmed or ratified." Hence it is argued, that Anderson, having recognized the plaintiff

as the legal owner of the property in dispute, under the second adjudication, has voluntarily consented to the execution of the judgment under which the adjudication was made, and that this amounts to a sufficient confirmation or ratification of the sale. Toullier, on the 1338th art. of the Nap. Code, vol. 8. No. 491, after giving the definition of the word ratification, which he considers as synonymous with approbation, recognizes two sorts of ratification, the second of which is : " *Celle par laquelle nous approuvons un contrat ou autre acte auquel nous avons concouru, ou auquel nous avons été appelés, mais qui était susceptible d'être attaqué pour des vices réels, ou apparens, de nature à en faire prononcer la nullité ou la rescision.*" This last sort of ratification is the one provided for in the 1838th art. of the Nap. Code, and in the 2252d of our Code, and in one, as well as the other, "*peut être faite expressément ou tacitement, verbalement, par écrit, ou par des faits qui manifestent clairement notre volonté quelquefois même par le silence.*" See also Toullier, vol. 8, Nos. 493, 502, 503, 509, 513, and 517. So, in the case of a minor who has given a receipt for the price of property illegally alienated during his minority, the receipt is considered as a ratification of the act, though originally null. Several instances of express and tacit ratifications are found in our jurisprudence, in which this court, in accordance with the principles recognized by Toullier, and contended for by the appellant, has uniformly decided that an act may be approved or ratified by implied or tacit ratification, though null and void *ab initio.* 10 Mart. 726. 5 Ib. N. S. 165. 6 La. 604. 7. La. 17. 17 La. 454.

An attentive examination of the second branch of the question, has convinced us that Anderson's consent to lease the property and to buy it from Landry, may also be considered as an acquiescence in the judgment which divested him of his original title. Reference is made, in the act under private signature, to the adjudication made to Landry. Anderson there agrees to purchase the very property which had been adjudicated under the judgment now complained of, and it appears to us that there cannot be a stronger case of acquiescence than the one under consideration. Under arts. 567 and 612 of the Code of Practice, no appeal can be taken from, nor can an action of nullity be brought against a

judgment which has been acquiesced in by a party who has suffered it to be executed. See also 2 La. 265. Toullier, vol. 10, No. 106, says : " *Acquiescer à un jugement, c'est en approuver les dispositions, et consentir qu'elles reçoivent leur exécution. Cet acquiescement peut se faire d'une manière expresse ou tacite : tacite, lorsqu'il résulte clairement et sans équivoque de ses actions que son intention est d'acquiescer au jugement.*" Merlin, Répertoire, *verbo* Acquiescement. Same author, Questions de Droit, *verbo* Acquiescement, § 3, in which this question is fully investigated. Favard de Langlade, *verbo* Acquiescement. Now, can it be seriously controverted that Anderson, who had in view the lease and purchase of the very property which he had been divested of by the judgment which was made the basis of Landry's title, did really recognize its validity, and approve its execution? Does not this act on his part, independently of the other strong fact that he suffered the property to be sold without making opposition, imply clearly the intention of abiding by that judgment, and of consenting that its execution should be maintained? An affirmative answer to this last question necessarily brings us to the conclusion, that Anderson's acts involve a positive renunciation of the means and exceptions which he might have opposed to the plaintiff's title, and that the litigious right or title by him sold and transferred to the defendant, must be defeated.

It has been urged that Anderson, when he signed the lease, was laboring under an error of law, and we have been referred to the case in 5 Mart. N. S. 265. We understand the counsel to mean that Anderson was not aware of his legal rights ; and that he did not know that he could attack the proceedings and the sale made under them to the plaintiff on the score of nullity. There is, however, no evidence in the record showing any error on the part of Anderson, or that such error was the only or principal cause of his contract. Civil Code, art. 1840. This cannot be presumed ; and it seems to us that this proposition sounds somewhat in contradiction with the position taken by the counsel in the argument of this cause, that Anderson did not answer to the rule served upon him, and did not think proper to resist it because he knew that the probate court, being without jurisdiction, the proceedings would be null and void. This would show

that he was sufficiently aware of the nature and extent of his legal rights. This allegation of error cannot avail the defendant.

Upon the whole, we must say, that the verdict of the jury is manifestly erroneous, and that it should have been in favor of the plaintiff; but as under the principles lately recognized in the case of the *Planters Bank of Mississippi* v. *Watson & Walker*, decided in the Western District, justice does not seem to require that this case should be remanded for a new trial before another jury; this court, being in possession of all the facts adduced in evidence by both parties.

It is therefore ordered and decreed that the judgment of the District Court be annulled and reversed, and that the title of the plaintiff to the property in dispute be confirmed; that he be put in possession thereof; and that the sale made by Anderson to the defendant be cancelled, so far as it affects said plaintiff's rights. And it is also ordered and decreed that the defendant pay the costs in both courts.