No. 4182

Second Circuit

———

PIRKLE & WILLIAMS, INC., v. SHREVE-
PORT JITNEY JUNGLE, INC.

———

(April 5, 1932. Opinion and Decree.)
(May 4, 1932. Rehearing Refused.)

———

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

Jackson & Smith, of Shreveport, attorneys for defendant, appellant.

DREW, J. This suit was instituted by plaintiff against defendant on July 22, 1930. Plaintiff claimed the sum of $1,450, with interest from July 15, 1930, until paid, alleging that on July 1, 1929, Victor M. Mahr leased to defendant company a certain store building, No. 127 Kings Highway, Shreveport, Louisiana, for a term of two years, the consideration being $100 per month, payable in advance. That on July 25, 1929, plaintiff acquired the property affected by the lease from Victor M. Mahr, together with his lessor's rights, lien and privilege; that the defendant had defaulted in payment of the rent since April 15, 1930, making $350 past due and unpaid at the time of the filing of this suit, and leaving a balance of $1,100, payable $100 per month, beginning August 1, 1930. A writ of provisional seizure was prayed for and issued, and on the same day, April 22, 1930, all the property contained in the leased premises was seized.

On August 8, 1930, defendant made application to have the property released to it on bond, the amount of the bond, $1,500, was agreed upon by attorneys for plaintiff and defendant and an order signed authorizing the release of the property to defendant, with full reservation of all the rights of the parties. On the 12th day of September, 1930, defendant moved to dissolve the writ of provisional seizure and prayed for judgment in the sum of $150, as attorney's fees, and $15, the amount of the premium on the bond, as damages sustained as a result of the improper issuance of the writ. It averred that at the time suit was filed and seizure made, plaintiff had received all rent demandable, except for the months beginning May 26, 1930, and ending July 26, 1930, for which it held defendant's checks. After reserving its rights under the foregoing motion, answer was filed on July 12, 1931, in which the following issues were set up:

I. That the former owner of the premises, Victor M. Mahr, leased the premises to defendant, the lease to be effective July 1, 1929; that the building was at the time in course of construction and incomplete, and possession was not delivered until July 26, 1929;

II. That when plaintiff acquired the premises from Mahr on June 28, 1929, as evidenced by deed recorded July 24, 1929, the lease which Mahr had theretofore executed in favor of defendant had not been recorded, but that it was recorded thereafter and therefore, as plaintiff took the premises free of any recorded lease, defendant was not bound for the unexpired portion of the lease;

III. It further alleged that it had paid

to Mahr the sum of $100 for the rent beginning July 26, 1929, and ending August 26, 1929, and that it had paid to plaintiff all rent beginning August 26, 1929, and ending July 26, 1930, aggregating $1,100.

IV. It further alleged that on July 17, 1930, it advised plaintiff of its intention to vacate the property before the termination of the current month, ending July 26, 1930.

V. It further averred that in the event the court should hold that the property was subject to the original lease executed by Mahr and that defendant was bound thereon, then, in the alternative, that plaintiff, on July 22, 1930, violated its obligation to maintain defendant in possession of the leased premises during the continuance of the lease by the manner in which the sheriff executed the writ of provisional seizure, and averred particularly that the sheriff, under the direction of plaintiff, demanded the keys to the premises and thereafter used the premises as a warehouse to store the property seized. That on the day the seizure was made defendant demanded in writing that plaintiff release the premises to it; that its demand was received by plaintiff on July 23, 1930, but that notwithstanding no reply was received and the sheriff continued to use the premises as a warehouse to store the effects seized, until these effects were released on bond August 8, 1930.

The case was tried in the lower court. The motion to dissolve was taken up first; thereafter, the case was tried on the main demand. The lower court rendered judgment in favor of plaintiff for the sum of $1,400, for fourteen months' rent at $100 per month, beginning April 26, 1930, with legal interest thereon from said date until paid, less a credit of $200 of date July 23, 1930. It maintained the writ of provisional seizure, recognized plaintiff's lessor's lien and privilege on the property seized and ordered it sold in accordance with the law. From this judgment the defendant has appealed.

Several checks filed in evidence bear the notation "for rent from the 26th of one month to the 26th of the next month." These checks were accepted as written and cashed, and it corroborates defendant in his testimony that the rent was due on the 26th day of each month. This being true, at the time of the seizure rent was due for the period beginning May 26, 1930, to July 26, 1930, amounting to $200.

Defendant contends that when he gave checks on July 17, 1930, to plaintiff covering this period of rent, the rent was paid. We do not agree with this contention, for the evidence shows that payment was refused on presentation of the checks to the bank, and until the checks were cleared, the rent was not paid. Therefore, at the time of the filing of this suit and the seizure of the property in the premises, there was at least the amount of $200 due plaintiff for past due rent. Defendant was removing the goods from the premises and plaintiff was justified in having a provisional seizure issue.

There is no merit in defendant's contention that the lease was not binding for the reason that it was not recorded at the time of the purchase of the property by plaintiff. The facts are that the lease was entered into by plaintiff and Victor M. Mahr, on the 24th day of June, 1929; Mahr was at the time owner of the property. The lease was not filed or recorded until later. On July 25, 1929, Victor M. Mahr executed a deed to the property to plaintiff herein and in that deed it provides that the sale is made subject to certain leases affecting said property describing

other leases, and "one in favor of Jitney Jungle, Incorporated, of Louisiana, duly filed and recorded in the Clerk's Office of Caddo Parish, Louisiana."

The deed to plaintiff was filed and recorded July 26th, at 8:59 a. m., and the lease was filed and recorded on July 26, 1929, at 10:30 a. m. The lease filed in evidence shows the lessee to be the "Shreveport Jitney Jungle Company, Inc.," and not "Jitney Jungle, Inc., of Louisiana." The evidence fails to disclose that any other lease was entered into by defendant and the fact that the name of the lessee in the lease contract and in the deed, with the assumption of the lease from Mahr to plaintiff, is different, is not raised by defendant and justifies us, from the evidence, in assuming that the lease filed in the record is the same lease under which defendant held possession of the premises and the same lease plaintiff assumed when purchasing the property.

It is also true that the deed to plaintiff referred to a lease duly filed and recorded, when the lease filed in the record was not recorded until after the recordation of the deed and neither was it filed for recordation until after the filing of the deed. This fact is what defendant bases one of its defenses on.

Although we should hold that the lease in question was not assumed in the deed of purchase by plaintiff, the record clearly shows that plaintiff and defendant affirmed the lease by their actions, defendant, in occupying the building and paying rent in accordance with the terms of the lease, and plaintiff, in accepting the payment of rent. There was no other lease contract between plaintiff and defendant and by their acts they both ratified the written lease, and it was binding on them both.

Defendant entered into the lease with Mahr before the building was completed. The lease recites the terms thereof to begin July 1, 1929, and expire July 1, 1931, at a monthly rental of $100, payable each month in advance on the first day of the month. On July 1, 1929, the building was not completed, and when it was completed and possession given defendant is disputed. Plaintiff contends that defendant took possession on July 15, 1929, and that the rent was due on the 15th of each month. Defendant contends that it was not given possession until July 26, 1929, and that the rent was due on the 26th day of each month. We think the preponderance of testimony bears out defendant's contention.

The president of the plaintiff company testified that he and defendant discussed their different contentions and he knew that defendant claimed the rent was due from the 26th to the 26th of each month, and after that for a number of months accepted and cashed defendant's checks, with the notation on them, "rent from the 26th to the 26th" of the respective month for which the check was given in payment of rent.

Cancelled checks were offered in evidence showing that the rent had been paid up to May 26, 1930. The check dated May 5, 1930, bears the notation "rent for May," which was accepted and cashed by plaintiff. On June 14, 1930, defendant wrote a check bearing the following notation: "Rent, 127 Kings Highway, for June, 1930." He did not send this check to defendant at that time and on July 17, 1930, the president of plaintiff company called on defendant's president in person, at which time he drew a check, dated July 17, 1930, bearing the notation "rent, 127 Kings Highway, for July, 1930." He at that time gave

these two checks to plaintiff's president who accepted same and attempted to collect them at the bank, where payment was refused. On July 22, 1930, this suit was filed and the property of defendant, located in the premises, was provisionally seized. It is clear that the past due rent at that time was only $200, covering the period from May 26, 1930, to July 26, 1930.

Plaintiff contends that it is entitled to the amount of rent to become due for the remainder of the term of said lease, basing its contention upon the following clause in the lease:

"It is further agreed that if the lessee fails to pay any one month's rent at maturity, all unmatured rent shall become due and exigible at the option of lessor or his assignees, if the lessee fails to liquidate the amount delinquent within ten days after written notice."

Defendant has not raised the question of plaintiff's failure to give written notice. However, the suit of plaintiff is based upon this written contract of lease and, in order to recover, must prove that it has complied with that contract. The very clause upon which it bases its claim for unmatured rent provides that it must give written notice demanding payment of past due rent, and only in case defendant fails to comply within ten days thereafter is the unmatured rent due and exigible. The proof fails to disclose that the written notice was given and is fatal to plaintiff's recovery of the unmatured rent.

In the alternative, defendant contends that the contract of lease was terminated by plaintiff (lessor) in failing to maintain it (lessee) in peaceable possession and that plaintiff evicted it from the premises. The writ of provisional seizure was issued on the day the suit was filed, July 22, 1930, and on that afternoon the deputy sheriff, in the presence of the president of plaintiff company, executed the writ by personal service upon the president of defendant company and took the goods that had been removed from plaintiff's premises and returned them to it. The president of plaintiff company demanded of the president of the defendant company the keys to the leased premises, one of which defendant's president gave to him, informing him that the drayman had the other. Plaintiff's president, after returning the goods that had been removed to the leased premises, either locked or had the deputy sheriff lock the door, and, for the reason that one other key was still out, he purchased a new lock and put it on the door and locked it. The keys were turned over to the deputy sheriff. The next morning, the key in the drayman's possession was also turned over to the sheriff, who kept all the keys. The premises were used to store the seized goods, either by order of plaintiff's president or with his full knowledge and consent, he being present at the time.

The building and contents remained so until August 8, 1930, at which time, by agreement of plaintiff and defendant, defendant furnished bond for $1,500 for the release of the property seized, with full reservation of all rights of the parties. Defendant at that time secured the keys from the sheriff and removed the merchandise, returning the keys to the sheriff where they have remained, so far as the record discloses.

The morning after the seizure, defendant secured $200, which he paid to plaintiff and received the two checks he had given on July 17th, on which payment had been refused. On the same day of the seizure, defendant addressed a letter to

plaintiff, which was received the following day and which reads as follows:

"7/22/30.

"Pirkle & Williams, Inc.,
"710½ Cotton St.,
"Shreveport, La.
"Gentlemen:—
"By your order the Sheriff of Caddo Parish, La., has locked up building 127 East Kings Highway now leased by us. Therefore we cannot sublet this building.
"We request that you have the Sheriff release this building to us at once so we can place a tenant in same.
"Yours very truly,"
"Shreveport Jitney Jungle Co., Inc.
"By Joseph C. McCarty, President."

No answer was made to said letter. Plaintiff's president testified that he complied with the request by instruction to the sheriff, but did not know what the sheriff did. The instructions he gave are shown by his reply to the following questions:

"Q. Instructed him to take the stuff out of the store or what did you tell him to do with it?
"A. I don't recall just what the instructions were, but my impression now is that they wanted to secure us and remove the property and we requested that that be done."

It is plain to see that he did not instruct the sheriff to return the keys to defendant nor made any effort to restore defendant to peaceable possession of the premises, if that would have prevented the lease from being terminated. Chryssoverges v. General Cigar Co., 163 La. 364, 111 So. 787.

Article 2692 of the Revised Civil Code fixes the duty a lessor owes a lessee in the following language:

"The lessor is bound from the very nature of the contract, and without any clause to that effect:
"1. To deliver the thing leased to the lessee.
"2. To maintain the thing in a condition such as to serve for the use for which it is hired.
"3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease."

Failure of the lessor to comply with this duty terminates the lease and he is subject to any damages caused the lessee thereby.

When plaintiff took the keys from defendant and locked it out of the leased premises it clearly violated the duty it owed its lessee and the lease was at an end. Henry Rose Merc. & Mfg. Co. v. Stearns, 154 La. 946, 98 So. 429; Pelletier v. Sutter et al., 10 La. App. 662, 121 So. 364; Wood v. Monteleone, 118 La. 1005, 43 So. 657; Viterbo v. J. Friedlander et al., 120 U. S. 707, 7 S. Ct. 962, 30 L. Ed. 776; Hitt v. Herndon, 166 La. 497, 117 So. 568.

The lessor's privilege only covered the property located in the premises and does not extend to the right of occupancy. The writ in this case covered all the property on which plaintiff had a privilege and did not include the right of occupancy. Henry Rose Merc. & Mfg. Co. v. Stearns, supra; Bruner Merc. Co. v. Rodgin, 130 La. 358, 57 So. 1004.

It was the duty of plaintiff to instruct the sheriff to remove the goods from the building and not to lock the building and keep the keys, and when the president of the plaintiff company locked the building himself, as he testified, he did that which is not justified in law and his act was illegal. He illegally evicted the lessee and terminated the lease. Therefore, it cannot recover for the rent that had not matured at that time.

Plaintiff contends that defendant had abandoned the building at that time and so removed all goods therefrom and, for that reason, he was justified in taking posses-

sion of it. There is no merit in that contention. If defendant was liable for the rent for the future term of said contract, it was entitled to possession and control of the premises, in so far as it did not violate any conditions of the lease contract. It had the right of occupancy of said premises and could actually occupy it or keep it vacant as he saw fit. Pelletier v. Sutter et al., supra.

Plaintiff had the right in law to terminate the lease for failure to pay rent, but could not exercise that right and also claim rent for future months.

The judgment of the lower court is incorrect and will have to be amended and, in amending the judgment, it will be necessary to redraft it. The lease contract calls for 8 per cent interest on all past due rent and 10 per cent attorney's fees, if suit was filed. However, plaintiff only sued for and prayed for legal interest and does not ask for attorney's fees.

It is therefore ordered, adjudged and decreed that the plaintiff, Pirkle & Williams, Inc., do have and recover judgment against defendant, Shreveport Jitney Jungle, Incorporated, in the full sum of $200, with interest at the rate of 5 per cent per annum on $100, from May 26, 1930, and on $100 from June 26, 1930, until paid, less a credit of $200 paid on July 23, 1930; that the writ of provisional seizure sued out herein be maintained and plaintiff's lessor's lien and privilege on all the property seized thereunder be recognized and enforced; that said property be sold according to law and that plaintiff be paid out of the proceeds of the sale thereof by preference and priority over all other persons, the amount of its claim, principal, interest and costs; the cost of appeal to be paid by plaintiff.