*1013
 
 MOORE, J.
 

 11 Jesse Means appeals a judgment rejecting his suit to evict his lessee, Comcast, Inc. Comcast answers the appeal, seeking contractual attorney fees. We affirm on the principal demand and amend the judgment to award reasonable attorney fees.
 

 Factual and Procedural Background
 

 The property involved is a 3,000-sq. ft. tract on Main Street in Gilliam in north Caddo Parish. Means’s sister, Mrs. Lay, previously owned the property. In August 1990, Mrs. Lay leased it to Cablevision of Shreveport for the installation of a satellite dish and other transmission and reception facilities. The term of the lease was 15 years, with an option (¶ VII) for the lessee to renew for one additional 15-year term by giving written notice any time prior to the end of the initial term. Rental was set at $1,000 per year, with the lessee to pay all property taxes. The lease also provided for reasonable attorney fees (¶ XII) in the event of legal proceedings. Mrs. Lay did not record the lease.
 

 In 1992, Time Warner acquired the cable franchise from Cablevision and continued making lease payments to Ms. Lay.
 

 In May 1998, Means and his wife bought the property from Mrs. Lay’s trust. On December 30, 1998, Means sent a letter to Cablevision’s manager, advising him of this. The letter concluded: “We are the legal owners of the ground where your cable television facility is located; therefore, please make your lease payment to Jesse L. and Marie S. Means.” Time Warner made seven annual lease payments to Means and his wife.
 

 |2On March 23, 2005, Time Warner advised Means by letter that it would exercise its option to renew the lease for another 15 years, tendering a check for the first five months’ rent. Means refused the check, telling Time Warner that he was not bound by the lease because it was never recorded. In November 2005, Means sent Time Warner a notice to vacate.
 

 In early 2006, Comcast acquired the cable franchise from Time Warner. Com-cast sent Means rent checks for the years 2006, 2007 and 2008, but he refused them.
 

 Means filed the instant suit to evict Comcast in October 2006. Comcast reconvened, seeking attorney fees under ¶XII of the lease.
 

 At trial in October 2008, the parties stipulated to most of the facts outlined above, and Comcast filed exhibits including the unrecorded lease. The elderly Means testified, but he did not remember much. He did not recall ever reading the lease, but admitted he probably knew about it when he bought the property. He admitted that Time Warner sent him a copy of the lease, and that Mrs. Lay’s lawyer, the late Sid Galloway, probably told him about it when he bought the property, but he was not certain of this. He admitted writing Time Warner in 1998 and directing them to send all future rent to him, but he could not recall the duration of the lease.
 

 The district court commended Means’s candor but found that by knowingly accepting seven years’ rent, he tacitly ratified Mrs. Lay’s lease and thus was bound by its renewal provision. The court therefore rejected the claim for eviction. The judgment was silent as to Comcast’s prayer for attorney fees.
 

 laMeans appealed. His appellate brief was untimely, but this court denied Com-cast’s motion to dismiss the appeal while Means obtained new counsel. Comcast answered the appeal, seeking contractual attorney fees.
 

 Discussion: Lease and Ratification
 

 By three assignments of error, Means contends that he was not bound by the terms of an unrecorded lease. First, he asserts that only a
 
 recorded
 
 lease binds
 
 *1014
 
 subsequent owners of the property, citing
 
 former
 
 La. C.C. art. 2733 (now art. 2712),
 
 former
 
 C.C. arts. 2265 and 2266 (now art. 1839),
 
 [1]
 
 R.S. 9:2721, and
 
 McDuffie v. Walker,
 
 125 La. 152, 51 So. 100 (1909). He shows that Mrs. Lay’s lease was not recorded, and contends that because he lacked either actual or constructive notice of its terms, he is not bound by it. Second, he argues the court erred in finding him bound to the renewal option in the unrecorded lease. He cites
 
 Julius Gindi & Sons Inc. v. E.J.W. Enterprises Inc.,
 
 438 So.2d 594 (La.App. 4 Cir.1983), and
 
 Judice-Henry-May Agency Inc. v. Franklin,
 
 376 So.2d 991 (La.App. 1 Cir.),
 
 writ denied,
 
 381 So.2d 508 (1980), which restate the basic rule of
 
 McDuffie v. Walker
 
 but add that even if a recorded instrument refers to an unrecorded lease, the third party is not bound. Third, he contends the court erred in finding a tacit ratification. In support he cites La. C.C. art. 1843 but urges that ratification is essentially an agency relationship in which the burden is on the party asserting the ratification.
 
 Fleet Finance Inc. v. Loan Arranger Inc.,
 
 604 So.2d 656 (La.App. 1 Cir. 1992). He submits there was insufficient proof of agency in that Mrs. Lay made no manifestation of authority to Means and Means relied on none.
 
 Broadway v. All-Star Ins. Corp.,
 
 285 So.2d 536 (La.1973). He concludes that his 1998 letter to Com-cast, requesting payment of all future rent, was insufficient to prove ratification.
 

 Comcast concedes that under art. 2712, Means would not have been bound by the unrecorded lease, but urges that under art. 1843, he ratified it by accepting the benefits thereof. Comcast cites
 
 Pirkle & Williams v. Shreveport Jitney Jungle Inc.,
 
 19 La.App. 729, 140 So. 837 (La.App. 2 Cir.1932), and
 
 P.J.’s Army Surplus & Co. v. G.D. & G.,
 
 93-609 (La.App. 5 Cir. 3/16/94), 635 So.2d 1217, to show that ratification of an unrecorded lease occurs when the new owner allows the lessee to remain on the premises and accepts the rents for a time. Comcast contends that proof of ratification was strong in that Means asserted ownership in 1998, accepted rent payments for seven years, and benefitted from Comcast’s tax payments on the tract. Comcast also shows that Means’s testimony was equivocal, never excluding the fact that he was indeed aware of the renewal clause when he bought the property from his sister. Finally, Comcast disputes the theory that ratification applies only to agency, as art. 1843 appears in Title III, Chapter 5, “Proof of Obligations,” and plainly applies to
 
 all
 
 obligations.
 

 Both parties are correct as to the general effect of an unrecorded lease. “An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.” La. C.C. art. 1839. “A third person who | sacquires an immovable that is subject to an unrecorded lease is not bound by the lease.” La. C.C. art. 2712.
 

 Nevertheless, the law provides for the ratification of obligations, as stated in La. C.C. art. 1843:
 

 Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf without authority.
 

 An express act of ratification must evidence the intention to be bound by the ratified obligation.
 

 
 *1015
 
 Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefits of that obligation.
 

 See also
 
 Frazier v. Harper,
 
 600 So.2d 59 (La.1992).
 

 Although art. 1843⅛ mention of “without authority” suggests an application to agency questions, courts have long applied it to sales and leases.
 
 Landry v. Connely, 4
 
 Rob. 127 (1843);
 
 Pirkle & Williams Inc. v. Shreveport Jitney Jungle Inc., supra; P.J.
 
 's
 
 Army Surplus & Co. v. G.D. & G., supra.
 
 In
 
 Pirkle & Williams, supra,
 
 this court stated:
 

 Although we should hold that the lease in question was not assumed in the deed of purchase by plaintiff, the record clearly shows that plaintiff and defendant affirmed the lease by their actions, defendant, in occupying the building and paying rent in accordance with the terms of the lease, and plaintiff, in accepting the payment of rent. There was no other lease contract between plaintiff and defendant, and by their acts they both ratified the written lease, and it was binding on them both.
 

 More recently, this court held that in order for a lease agreement to be binding on third parties, it must be recorded or the purchaser must intend to purchase the property subject to the unrecorded lease.
 
 Hill v. Doctors Park of Minden,
 
 501 So.2d 987 (La.App. 2 Cir.1987). In
 
 Hill,
 
 we found that 16the purchaser’s “simple knowledge” of the existence of the lease would not suffice to show an intent to assume the lease.
 

 In the instant case, the record shows much more than simple knowledge on Means’s part. As in
 
 Pirkle & Williams, supra,
 
 Means allowed Comcast to keep its equipment on the property, advised Comcast to pay him all future rent, and accepted several years’ rent; he also received the benefit of another lease provision whereby Comcast paid annual property taxes. Moreover, Means candidly admitted that he received a copy of the lease at some unspecified time, and he “probably” knew about its provisions when he bought the property from his sister’s trust, as his sister’s lawyer “probably” told him. On these facts, the district court was not plainly wrong to find that Means ratified and adopted Mrs. Lay’s unrecorded lease, including the renewal option. With the finding of ratification, we need not consider the issue of indirect reference to an unrecorded instrument, as discussed in
 
 Julius Gindi & Sons, supra,
 
 and
 
 Judice-Henry-May Agency v. Franklin, supra.
 

 The judgment rejecting Means’s claim to evict Comcast is affirmed.
 

 Attorney Fees
 

 By answer to appeal, Comcast urges the district court erred in failing to award reasonable attorney fees under ¶XII of the lease. Comcast submits that counsel’s affidavit reflects fees of $8,559.20 incurred from July 2006 through August 27, 2008, about five weeks prior to trial, and it was never traversed by Means.
 

 17“If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee’s attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well.” La. C.C. art.2000. The instant lease stated, “Should it become necessary for either party to resort to legal proceedings for the enforcement of any of its rights under this lease, the losing party shall pay such reasonable expenses, including reasonable attorney’s fees, as the other party may incur and as the facts may warrant.” Comcast is clearly entitled to attorney fees; the district court was plainly wrong to reject (albeit tacitly) this claim.
 

 We have reviewed Comcast’s affidavit in light of the usual criteria for attorney fees
 
 *1016
 
 summarized in
 
 State v. Williamson,
 
 91-2401 (La.4/20/92), 597 So.2d 439. The facts of the case were not intricate, the issues not unusually difficult, and counsel made one court appearance. On the other hand, counsel successfully defended Com-cast’s very favorable lease, and the affidavit does not include trial preparation, trial and appeal. Still, on this record it would be unreasonable to impose an attorney fee of over $8,500 for a relatively simple case worth only $15,000 to the lessor. The judgment will be amended to award an attorney fee of $4,500.
 

 Conclusion
 

 For the reasons expressed, the judgment is amended to include the provision that the plaintiff, Jesse L. Means, is ordered, adjudged and decreed to pay the sum of four thousand, five hundred & .00/1.00 ($4,500.00) dollars to the defendant, Comcast, Inc. The judgment is otherwise affirmed. Appellate costs are to be paid by Jesse L. Means.
 

 AMENDED AND AFFIRMED.
 

 [1]
 

 . Means’s brief cites several superseded Civil Code articles. Former art. 2733 was amended by 2004 La. Acts No. 821, § 1, and redesig-nated as art. 2712, effective January 1, 2005, before the instant renewal option accrued and this suit was filed. Former arts. 2265 and 2266 were amended by 1984 Acts No. 331, § 1, and redesignated as art. 1839, effective January 1, 1985, even before Ms. May granted the lease to Cablevision. In all instances, we have applied the amended versions of the articles.