The plaintiff in this case, Aminthe Curry, sues the defendant, Luzion Caillier, as the sole and only heir of her deceased sister, Louise Curry, to recover from the said defendant the sum of $765.43 cash money, also a number of articles of jewelry valued at the sum of $360 and two rocking chairs valued at $7.50 each, all of which, she alleges, the defendant removed from a residence in which her deceased sister occupied a room, in the City of Lafayette, after she had been taken to an institution for feeble minded people at Pineville, Louisiana. She alleges that defendant took all of the said property without any authorization; that he has the same in his possession and, as it lies within his power to dispose of the same during the pendency of the suit, she is entitled to have the same judicially sequestered. In the event that the said defendant should have disposed of the money and the movable property which is fully described in the petition, she prays, in the alternative, that she recover judgment for the value thereof in the full sum of $1,140.43.
Having made the necessary affidavit and furnished the bond required by the district judge, an order of judicial sequestration was issued but apparently the same was never executed by the deputy sheriff charged with its execution. There is no complaint on this point however and it is not made an issue in the case.
The defendant's answer denies the alleged heirship of the plaintiff and her consequent ownership of the property she claims and further it is therein averred that at the time the deceased Louise Curry was committed to the institution for feeble minded she was residing in the house from which he took the money and articles described which house was furnished her by him. After her commitment he went to her room and removed cash, not in the amount of $765.43 as claimed, but in the amount of $730.70. He also removed the articles of jewelry but did not remove the two rocking chairs until after she had died. He alleges further that all the property *Page 864 
that he took had been merely loaned by him to Louise Curry with the exception of a certain portion of the cash money which she had taken from his clothes without his consent.
Further answering the defendant set out that he paid all the expenses in connection with the death and burial of Louise Curry and that these amounted to the sum of $424.75. In the event that judgment should be rendered against him in any amount, he assumes, in the alternative, the position of a plaintiff in reconvention, asserts his claim for the said amount of $424.75 and prays for a judgment with recognition of the lien and privilege which the law accords for the payment of such expenses.
The trial judge after hearing the testimony in the case rendered judgment in favor of the plaintiff for the full amount of $765.43, cash which defendant had removed from the premises occupied by the deceased and ordered that the sequestration be maintained and that the sheriff deliver the property consisting of the items of jewelry to the plaintiff. The judgment further decreed that in the event the defendant was unable to deliver the two rocking chairs taken by him that the plaintiff recover judgment in the further sum of $15 for their value. The defendant took this appeal.
The first point to be discussed is whether or not Aminthe Curry is the legal heir of the deceased Louise Curry, her sister, for if she is not she would have no right to stand as plaintiff and recover judgment in the suit.
Before filing this suit, plaintiff had the succession of her sister opened and had herself recognized by judgment of the Fifteenth Judicial District Court of the Parish of Lafayette as her sole and only heir. The judgment also placed her in possession of all the property left by her deceased sister which property was fully described in the schedule of assets belonging to her estate and included the very property which she is now seeking to recover. Whilst it is true, as urged by counsel for defendant, that such a judgment is only ex parte, it is nevertheless prima facie evidence of ownership which entitles the party recognized by it to full and exclusive ownership until such time as some one else appears to assert and prove ownership in himself. This is a well recognized principle of law as shown in the numerous authorities cited in brief of counsel for plaintiff, especially Glover et al. v. Doty, 1 Rob. 130; Dixon v. Commercial National Bank, 13 La. App. 204, 127 So. 428, and Taylor v. Williams, 162 La. 92,110 So. 100.
It also appears, from the pleadings, that the allegation in plaintiff's petition to the effect that she was the heir of her deceased sister, recognized as such in the succession proceeding just referred to, was not denied in the defendant's answer, the answer being merely that the succession proceeding is the best evidence of its contents. If it is, it follows that proof was made by the record of the succession and it is significant that although an objection to its offer was made on some other ground, nothing that is contained in it is contradicted in any manner whatsoever.
Therefore we can well take it for granted that plaintiff is properly before the court in her capacity as the heir of her deceased sister claiming ownership of the property which she is alleged to have died possessed of, and that brings us to a discussion of the merits of the case.
This record reveals that the defendant and the deceased Louise Curry lived a life of open concubinage for more than 12 years. During all that time the defendant treated her as his mistress which in fact she was. He seemed to have been as kind to her as men who lead that kind of life are to the women they keep and if we are to judge by the testimony in this case, he was in a position to give her all she needed to satisfy her wants. He seemed to have been a free spender and carried large sums of money on his person at all times. He visited in Mexico and brought back trinkets and souvenirs which he distributed among his friends and those who worked for him.
Some time in the latter part of 1942, defendant was called to service in the Army and he was gone for almost a year. Up to that time he had been living with Louise Curry in what he refers to as his house and *Page 865 
supported her and her mother who was living with her. When he returned from the Army somethiing evidently had happened to estrange him and he no longer stayed with her. He provided a room for her in a house which he rented to a Mr. and Mrs. Antoine Trahan. She lived in that room for some three years or so when she became feeble minded. She was taken to the Parish jail awaiting the time to be transferred to the institute for feeble minded people at Pineville. She was taken there and died on August 19, 1946.
On the day after she was placed in the Parish jail the defendant went to her room and removed the property sought to be recovered by the plaintiff, the only difference in what she claims and what he admits having taken being the difference between $765.43 and $730.70. He did not remove the two rocking chairs that day but they were admittedly taken by him after her death. Defendant says that he was requested by Mrs. Trahan to go and take those things because she had children and she was afraid if any were to disappear they would be blamed for it. It is urged that Mrs. Trahan's action was an admission on her part that she recognized the property as belonging to the defendant and not to the plaintiff, Louise Curry's sister. We do not think however, that Mrs. Trahan's testimony has any bearing on the question of ownership as evidently she did not know who the property belonged to and because of the relationship which existed between the defendant and Louise Curry she no doubt thought that he was a proper party to be consulted in the matter.
The real point in the case is how did Louise Curry come to be the owner of the property involved. There was an attempt made by plaintiff to show that her sister had worked and earned money and that some of the jewelry, especially a watch, had been bought and paid for out of her own funds. We do not think that there is sufficient testimony to support that contention but are convinced that Louise Curry, by virtue of having been given all of these things by the defendant when she was actually living with him as his concubine, was the undoubted owner. Defendant's story that he has a right to take the cash money now, in order to reimburse him for the great sums of money he says she took from him when she was living with him, does not impress us. He claims that she took advantage of him when he was drunk and rifled his pockets. The only proof he offers on this is the testimony of some witnesses who say that Louise Curry told them that. The people to whom she is said to have told that were people she spoke to after she had been confined to the parish prison and certainly her mind was in no condition to bind her to such statements even admitting she made them.
But even though she did take money from his pockets, on occasions, what else could he expect? Under the circumstances arising out of their relationship we presume that at the time she took it it must have been alright with him for her to do so for he never complained to her about it. He says something about having set a trap for her once but his testimony on this point is so conflicting with that of his witness, Al. Grubbs, his confidential employee who suggested the plan, that the whole thing strikes us as being as fantastic a story as is his next story about the jewelry and trinkets which he claims are still his property.
With regard to these he contends that he never gave them to her at all and simply loaned them. Yet he states that when he returned from Mexico where he had bought all these trinkets, after displaying them all on a table he distributed them among his friends. To these friends, he claims they were gifts, but to his paramour, they were merely loans. That kind of testimony did not impress the trial judge, nor does it impress us and we are convinced that the judgment appealed from is correct in holding that this property, including the two rocking chairs, and this cash money which was found in her room all belonged to the decedent Louise Curry and as such was inherited by plaintiff, her sole and only heir.
Defendant did pay all expenses in connection with the burial of Louise Curry. These amounted to the sum of $424.75 which he asks to recover on the basis of compensation against whatever amount he *Page 866 
may be held to have to account to the plaintiff for. The trial judge refused to allow compensation on the ground that this case presented one of the exceptions which is provided for in cases of compensation, under Article 2210 of the Civil Code. That Article provides that compensation takes place no matter what the cause of either of the debts may be, except in certain instances, the first exception being "of a demand of restitution of a thing of which the owner has been unjustly deprived." It is obvious that recovery by the plaintiff in this case amounts to the restitution of a thing of which the plaintiff has been unjustly deprived by the defendant, and that is exactly what is provided for in the article of the Code under consideration. We find the case of Ferrara v. Polito, La. App., 167 So. 120, to be authority on this point, and so is the case of Hitt v. Herndon 166 La. 497, 117 So. 568.
Judgment affirmed, defendant, appellant to pay the costs of appeal.