SARTAIN, Judge.
The representative of the succession of Ida Accardo Dimattia brought this action against Joseph S. Bonfanti and Virginia D. Cline, alleging that they had wrongfully obtained certain funds which had belonged to Ida Accardo Dimattia. The petition prayed for the return of these funds to the succession. After trial, judgment was rendered dismissing the action against Joseph S. Bonfanti and awarding judgment against Virginia D. Cline for $14,702.78. Mrs. Cline appealed. The succession representative did not appeal nor answer the appeal. Therefore the judgment dismissing Bonfan-ti is not before us.
*585 In reaching his decision the trial judge classified this proceeding as one of collation. This classification has given rise to two procedural objections to the judgment on the part of appellant. He asserts that the trial judge erred in granting recovery based upon collation when the plaintiff never prayed for collation. Furthermore,-he argues that a succession representative has no right of action to enforce collation. On the other hand, appellee asserts that the raising of these objections serves only to cloud the issues. We are somewhat in agreement with appellee, since we find that the classification of the action as one of collation was unnecessary to a decision under the factual findings of the trial judge. ■ We therefore need not address appellant’s procedural arguments.
The petition of the plaintiff is clearly based on the allegations that property which belonged to decedent is in the hands of the defendants and that plaintiff desires its return. Clearly such an action is sustainable without regard to the rules of collation. Curry v. Caillier, 37 So.2d 863 (La.App. 1st Cir. 1948).
By way of background information, it should be noted that following her husband’s death decedent became dependent on her children. For approximately a year prior to her death she resided in a nursing home and for three years before that with her daughter, Mrs. Cline, one of the defendants herein. Decedent could neither read nor write (letters nor figures) and signed all instruments presented to her with an “X”. Otherwise, she was rather alert.
When this matter was tried on the merits, it was shown that Mrs. Cline was mentally incapable of testifying. However, her son, Joseph F. Bonfanti, did testify. He held his mother’s power of attorney and for a number of years prepared her tax returns. In general he was familiar with her financial affairs although he could not identify the source of some of her cash assets. Mr. Bonfanti had no knowledge of the transactions conducted by his mother on behalf of his grandmother.
The record clearly establishes that Mrs. Cline alone conducted her mother’s affairs. All of the numerous accounts of the latter were in their joint names. Counsel for appellant argues that because of the conceded alertness of decedent it is just as reasonable to assume that the two comin-gled their funds for years by mutual consent as it is to infer that the financial transactions complained of were the result of deliberate conversion by Mrs. Cline; and, to hold that Mrs. Cline must now account for these funds is to require that she prove a negative.
We are satisfied that on the accounts which listed both decedent and Mrs. Cline, the latter was for convenience only. Mrs. Cline had her own accounts and continued to maintain them in singular fashion. The trial judge found that the joint accounts were the separate property of decedent. In this determination we concur.
Under the circumstances shown above it is clear to us that an accounting is owed to the succession of decedent by Mrs. Cline. Having undertaken the management of her mother’s affairs which included numerous withdrawals and redeposits of considerable sums of money, she assumed a fiduciary duty as her mother’s agent. Succ. of Mayeux, 339 So.2d 1236, 1245. (La.App. 3rd Cir. 1976) writ refused 341 So.2d 1129 (La.1977).
The question of proof is factual once the preliminary legal question of burden of proof is resolved. On this question the trial court stated:
“At the close of trial the court placed upon defendant the burden of accounting for the withdrawal of funds by Mrs. Cline from decedent’s accounts. The burden was so placed on defendant because plaintiffs were able to prove that defendants had obtained possession of certain funds as a result of the withdrawals from various accounts belonging to decedent.”
We agree with the trial judge that the burden of proof should be shifted to the defendant once it was shown that the funds in dispute were those of the decedent.
*586 All of the other arguments presented by appellant are factual. We reject these arguments, finding that the trial judge’s factual findings are fully supported by the record. We therefore adopt his findings of fact.
“The court will now proceed to examine the merits of plaintiff’s claim concerning the wrongful appropriation of funds from their mother by the defendant, and/or whether the defendant had satisfactorily accounted for the same.
Notwithstanding the fact that decedent lived with Mrs. Cline for such a long period before her death, the accuser heirs could never be persuaded that their mother would prefer their sister Mrs. Cline over them but rather believed that Mrs. Cline in some way deceived their mother and gained control over all of her finances, ultimately appropriating them to their detriment and to her sole and exclusive use. In support of this conclusion, they rely on the following: the testimony that decedent always had large sums of money in cash, either on her person or hid away somewhere in her house or in Mrs. Cline’s house. The estimates range from a cigar box full of ten and twenty dollar bills to paper sacks, two to four inches thick, containing ten and twenty dollar bills. These funds all disappeared. In fact, the only cash found after the heirs gained control of their mother’s succession was a small purse containing $6.90.
Phillip Dimattia testified concerning these large amounts of cash in his mother’s possession and further testified that Mrs. Cline had told him she put the money in a safety deposit box. Since there is no evidence of a safety deposit box, the accuser heirs believe that the only explanation for the whereabouts of this undetermined sum of money is that their sister stole all of it and placed the same in her own safety deposit box.
The accuser heirs have failed to establish with any certainty either what happened to these large amounts of cash which decedent purportedly had on hand or the amount thereof. Any judgment based on the estimated size of the funds in cigar boxes and paper bags would be entirely speculative. The failure of proof disposes of this contention.
Other transactions during the time Mrs. Cline was in charge of her mother’s financial affairs which the accuser heirs rely on as proof of wrongdoing are as follows:
(1) Two growth bonds of the Baton Rouge Bank and a savings account, total value of $12,202.78, were cashed and a check for the proceeds delivered to Virginia Cline — all on January 7, 1971.
(2) $7,828 was withdrawn from the Home Savings and Loan Association on May 16, 1973.
(3) $4,365.23 was withdrawn from the Capital Building and Loan Association on May 16, 1973.
(4) $2,500 was withdrawn from the City National Bank on May 21, 1973.
(5) $9,447.66 was withdrawn from the City National Bank on October 8, 1973.
In addition to the above, the accuser heirs estimate that during the three years’ control over her mother’s affairs Mrs. Cline received about $27,000 of Mrs. Dimattia’s income in the form of rents.
From the foregoing, the accuser heirs argue that taking her bank accounts, considering her two growth bonds but not the cash on hand which she had stashed around the house, the amounts withdrawn from January 7,1971, through October 8, 1973, amounted to $36,343.67. Coincidentally, Joseph Bonfanti testified that he deposited $36,090.28 for his mother in his credit union account.
The defendant, by way of accounting for the cashing of the growth bonds and the small savings account at the Baton Rouge Bank, contends that Mrs. Cline and decedent commingled their funds and in particular the two $5,000 growth bonds.
These bonds were cashed on January 7, 1971, and one explanation offered by defendant’s counsel is that defendant was legally entitled to make the withdrawal *587 or cash the bonds. No one doubts the validity of this assertion, but the court is confident that the bonds were owned solely by decedent and that the only reason Mrs. Cline’s name appeared thereon was simply for convenience. The repeated inclusion of Mrs. Cline’s name on other savings accounts and bank accounts compels this conclusion.
It is suggested that part of the money could have been included in the gift of approximately $14,000 which decedent gave her children. The evidence shows that decedent did give her children such sums of money but the dates of the gifts, according to the court’s recollection of the evidence, show that they were given before the bonds were cashed.
It is also contended that the money could be the same as that which showed up on January 15, 1973, some two years later, in decedent’s Account No. 29901 at the Capital Building & Loan Association in the sum of $13,758.47. The very fact that such funds would have been withheld from deposit for such a length of time makes the possibility unlikely.
Additionally, an endorsement on the back of the check reveals that it was negotiated to the credit of the Capital Building & Loan Association on January 11, 1971, but there is no evidence that it was placed in decedent’s savings account on that date. The court is not satisfied with the accounting of these funds and will order Mrs. Cline to return them to the Succession.
The court now considers the following withdrawals on May 16, 1973, to-wit, the sum of $7,828.81 from Home Savings & Loan and $4,365.23 from the Capital Building and Loan Association. These withdrawals were referred to in paragraph 5 of plaintiff’s petition in the following manner:
‘1. Withdrawal of $7,828.81 from a savings account in Home Savings Association in the name of Ida Dimattia and a withdrawal of $4,365.23 from a savings account in Capital Savings and Loan in the name of Ida Dimattia and Michael Dimattia on May 16,1973. Defendants had no authority to make these withdrawals and have not explained why the money was held until October 8, 1973, when it was deposited in a new account in Capital Savings under the name of Ida Dimattia and Virginia Cline.’
Inasmuch as the foregoing allegation admits that these funds were redeposited in the Capital Building & Loan Association until taken into possession by the executor of the will of decedent, we can only view the allegation as a complaint that the aforesaid withdrawals were not accounted for from May 16, 1973, until October 8, 1973. No remedy having been sought as to these withdrawals, the court is unable to grant relief therefor.
[[Image here]]
The withdrawal of $9,447.66 from the City National Bank on October 8, 1973, was accounted for by depositing said sum on the same day in an account at the Capital Building and Loan Association.
This leaves only one remaining sum unaccounted for, namely the sum of $2,500.00 on May 21, 1973 from the City National Bank. This withdrawal has been proved but there is no evidence as to where it was redeposited. The defendant will be required to return this sum to the succession.”
In summary, the trial judge held that Mrs. Cline had failed to account for the proceeds from the growth bonds of Baton Rouge Bank ($12,202.78) and the May 21, 1973, withdrawal from the City National Bank ($2500.00) and rendered judgment against her in the sum of $14,702.78. We find no manifest error in this determination.
For the above reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.